JERRY WOLF et al., Appellants, v. HARTFORD LIFE INSURANCE COMPANY.

In Banc, July 3, 1924.

**APPELLATE JURISDICTION:** Constitutional Construction: Action at Law or Suit in Equity: Denial of Jury Trial. Where the only ground upon which this court can acquire jurisdiction of the case is that the trial court by ruling that the case was a suit in equity denied to appellants "a trial by jury guaranteed by the Constitu-

tion of Missouri," this court does not have jurisdiction. In order for a constitutional question to give this court jurisdiction of a case of which it does not otherwise have jurisdiction, that question must involve a construction of the Constitution, and where the only question is whether the case is an action at law or a suit in equity no such construction is involved, but the question must be determined by the construction of the pleadings. It being admitted without controversy that if the case is a suit in equity appellant· was not entitled to a trial by jury, if the trial court erred in ruling that the case is a suit in equity, that error lies in a misconstruction of the pleadings, and no mere misconstruction of the pleadings can give this court jurisdiction, no matter what right is affected, nor how that right is protected. An assignment that the trial court denied to appellant his constitutional right of a trial by jury in construing the pleadings as stating a suit in equity, does not call for a construction of the Constitution, or an application of the constitutional provision to the case, but it only calls for a searching of the allegations of the pleadings for the purpose of determining whether they state a suit in equity or an action at law, and a construction of the Constitution would in no wise aid in answering that question.

*Held*, by GRAVES, C. J., with whom WOODSON and WALKER, JJ., concur, that the word "construction" used in the clause giving this court jurisdiction "in cases involving the construction of the Constitution of the United States or of this State" means that the courts shall take the plain language of the constitutional provision alleged to have been violated along with all the facts and circumstances of the case, and from them determine whether or not a constitutional right has been invaded; that to determine whether a constitutional right has been denied is an exercise of jurisdiction; and that to determine whether a constitutional right has been invaded, it is not sufficient to say that the constitutional provision is plain and needs no construction, but it is necessary to take all the facts of the case, which in some cases may embrace pleadings alone, and in others statutes alone, and in others both pleadings and statutes.

Headnote:    Courts, 15 C. J. sec. 511.

Appeal from Jackson Circuit Court.—*Hon. Allen C. Southern*, Judge.

Transferred to Kansas City Court of Appeals.

*Sebree, Jost & Sebree* for appellants.

*C. G. Myers* and *Amos Townsend* for respondent.

JAMES T. BLAIR, J.—Appellants sued on a blanket policy of insurance which had been issued to the Kansas City Live Stock Exchange for its benefit and that of all shippers and purchasers who might have livestock in its yards. In Division One an opinion was written on the merits. Two judges dissented on the ground that this court had no jurisdiction. On transfer to Court in Banc the cause was re-argued and re-assigned.

Appellants allege they lost by fire livestock then in the yards of which the value was $34,105 and that they have collected on fourteen specific insurance policies the sum of $29,584.06, and they ask judgment for the difference in the sum of $4519.94 and interest at six per cent from June 1, 1918. They further pray judgment for $450 damages for vexatious delay and $500 attorney's fees. Suit was begun in 1918. Judgment was rendered in October, 1921. It is shown by a term bill of exceptions, which is not incorporated in the final bill, that when the pleadings had been settled respondent filed its motion as follows:

"Comes now the defendant and shows the court that the above entitled cause is an equity case; that the same was, on the 9th day of March, 1920, listed as a jury case. Wherefore, defendant moves the court that said cause be taken from said list of jury cases, and that it be ordered that said cause be placed on the equity side of the docket and tried as an equity case."

The court on this motion ruled that "said motion is in all respects sustained and said cause is stricken from the jury docket as a jury case, and the court finds and declares that said cause is triable as an equity case by the court without a jury." It appears that appellants excepted and protested this ruling on the ground "that the court by said action and ruling does thereby deny to these plaintiffs, and to each of them, a trial by jury guar-

anteed to plaintiffs by Section 28 of Article 2 of the Constitution of the State of Missouri.''

When the cause came on for trial in another division, appellants renewed their demand for a jury, but (the record recited) ''it appearing that Judge Lucas of Division No. 2 of said circuit court having already ruled adversely to plaintiffs' demand, a jury trial was refused plaintiffs, to which action of the court in refusing plaintiffs a jury trial the plaintiffs at the time excepted and still except.''

The amount sued for is not sufficient to give this court jurisdiction.  Unless the ruling denying a jury raises a constitutional question of the sort which vests jurisdiction in this court, the case must be transferred. In order for a ''constitutional question'' to give this court jurisdiction of a case of which it otherwise would have no jurisdiction, that question must be one ''involving the *construction* of the Constitution of the United States or of this State.''  It is not suggested that the construction of the Federal Constitution is involved, and the single question is whether the *construction* of the State Constitution is involved.

It was not denied in the trial court nor is it denied here that appellants are entitled to a jury if this is an action at law.  Nor has it been claimed that they are entitled to a jury if this is a suit in equity.  Neither party makes either of these untenable suggestions either in brief or oral agreement.  Both are in agreement that the Constitution guarantees a jury, if one is desired, in all actions at law, and that it does not give a right to a jury trial in suits in equity.  This has been decided long ago and often.  The ruling of the trial court was that the suit was in equity and for that reason no jury could be demanded as a right.  It appears, therefore, that the parties and the court had no trouble in construing the Constitution.  All construed it the same way.  The difference of opinion arose out of the question whether the proceeding was an action at law or a suit in equity.  That was the only difference of opinion in the trial court, and

is the only one here relevant to the question under consideration. That is the sole basis of appellants' argument in support of their contention that they have been denied a constitutional right, i. e. that this is an action at law. It is, therefore, all that can be considered in connection with the question whether this court is to retain jurisdiction. It is obvious the solution of the problem whether this proceeding is an action at law or a suit in equity will determine whether appellants are entitled to a jury and will answer the only question raised or presented respecting the denial of a jury trial in this case. It is just as obvious that in order to confer jurisdiction upon this court in this case, the solution of the question which does so must involve a construction of the Constitution. It is equally clear that no court by *construing the Constitution* can determine whether this is an action at law or a suit in equity. That is a question which, as this court has so often held, must be answered by a construction of the pleadings in the case. If jurisdiction were retained and this court heard the case here, there is no foundation either in the record or in any question raised by appellants which would justify any *construction* of the Constitution. It would be singular if this court could retain jurisdiction of this case on the ground that a construction of the Constitution is involved, when the record does not present and appellants do not raise and this court, therefore, could not actually decide, any question involving such construction.

If the trial court has erred in holding this to be a suit in equity, that error lies in a *misconstruction of the pleadings,* since it is settled the pleadings determine that question, and no mere misconstruction of pleadings can give this court jurisdiction of a case, no matter what right is affected, nor how that right is protected, nor from what source it comes. If this is not true in this case, then any and every suit in equity can be lodged here by the process of demanding a jury trial and having it refused. The principle contended for is broad enough to let in every suit on a contract on the contention

that the contract has been misconstrued and its obligation has been thereby impaired; and, in fact, there seems to be no reason to doubt that the same rule would give jurisdiction of every case in which error was assigned and it was claimed the guaranty that "certain remedy" must be afforded had been violated.

It will not do to say that subsequent cases will be excluded by the rule that a settled constitutional question, though raised, will not give jurisdiction. If that rule does not apply in this case, even if it be assumed the question raised would otherwise give jurisdiction, there is no logical ground for saying that the addition of one more to the already very numerous decisions of the question will change the situation.

The simple fact that a constitutional right has been denied does not take a case out of the jurisdiction of our courts of appeals. The *construction* of the Constitution must be involved. The denial of such a right is error, to be sure, but the language of the Constitution is plain, and mere error, however grave, does not vest jurisdiction in this court. To vest jurisdiction of the appeal in this court the case must come within Section 12 of Article VI of the Constitution. This one does not do so.

The opinion filed in Division illustrates the point. In that opinion it was said in the statement: "The plaintiff appealed to this court, our jurisdiction being invoked for the reason that a constitutional question is involved." The question of jurisdiction was not discussed. When the divisional opinion took up the question to which it had referred as the foundation of this court's jurisdiction, it devotes two pages to it. There is not a word in it which pertains to the *construction* of the Constitution. It is devoted solely to the question whether the answer transformed the case into a suit in equity. The averments of the answer pertinent to this question are discussed in detail. One by one they are held to have no such effect as respondent claims they had; and the paragraph concludes: We hold, therefore, that the answer presented no eqitable

features entitling the defendant to affirmative relief, or any relief in equity, and, therefore, the case was not properly transferred to the equity docket, and plaintiffs were erroneously denied the right of trial by jury." The writer of that opinion and the concurring judges passed on the point in this case by turning to the pleadings and construing them, and in no particular attempted to construe the Constitution in solving the question upon which it is conceded this court's jurisdiction depends if jurisdiction it could have.

Reference was made in the oral argument to State ex rel. Prior v. Kansas City, 261 S. W. 112, in which the question was whether one was entitled to a jury in a proceeding by mandamus. The question there was whether the constitutional guaranty of trial by jury covered proceedings by mandamus. Clearly, the solution of that question required a *construction* of the provisions of the Constitution invoked here, to determine whether proceedings by mandamus fell within it.

It is suggested that the decision in Creve Coeur Lake Ice Co. v. Tamm, 138 Mo. 385, is authority for the retention of jurisdiction in this case. That decision was cited and relied upon in the dissent from the divisional opinion. It is an excellent portrayal of the difference between a question which gives jurisdiction and one which does not. That was an action at law. The court discussed and decided, separately, the question (1) whether the statute permitting references without consent, as construed prior to the "adoption of the present Constitution," was constitutional, and, as the court stated it, (2) "whether the circuit court erred in holding that this was a case falling within the statute." It held (1) that the statute was constitutional, and (2) that there was no long account in the case within the meaning of the statute. The question whether the reference statute was valid depended upon a construction of the constitutional guaranty of trial by jury. In deciding that question the court discussed and construed the pertinent provision of the Constitution and the decisions

304 Mo.—30.

relevant to the question of the constitutional validity of the statute in question. The presence of that question was the basis of this court's jurisdiction in that case. Then the court, in a separate and succeeding paragraph, took up the second question. With respect to that question the court did in that case just what this court would have to do in this case if jurisdiction should be retained—it turned to the *pleadings* and found the answer there. There is nothing in that paragraph of that opinion which indicates that this court thought it had anything to do with a construction of the Constitution, or with the question of the validity of the statute, or with that of its own jurisdiction. It held in that paragraph that there was no long account involved; that the statute, though valid, did not apply; and that the holding that it did and the granting of a compulsory reference constituted error, and sent the case back for trial. The court did not hold that it had jurisdiction in the Tamm Case because the trial court erred in referring a case which did not, on its facts, come within the reference statute. It held it had jurisdiction because "a construction of that provision of the Constitution of the State guaranteeing a jury trial was and is involved." That question of constitutional construction it then proceeded to discuss at length and to decide. It then moved on to the question whether the pleadings in the Tamm Case brought that case within the statute which it had just held to be constitutional, and held that they did not. It is upon language used in the discussion of this last question that the suggestion is based that the Tamm Case is authority for the retention of jurisdiction in this case. That language has no relevance to that question.

The case of Tinsley v. Kemery, 83 Mo. App. 94, was another referred case and involved the same question concerning jurisdiction which was in the Tamm Case. The court expressly held the "exact point" in the two cases to be the same. This language does not justify a construction of the opinion of the Court of Appeals such

as would convict it of (1) holding that the Tamm Case
decided what it is plain it did not decide, or (2) of hold-
ing that a question which did not involve a *construction*
of the Constitution would confer jurisdiction in circum-
stances like those in that case and in this case, particu-
larly in view of the fact that the Court of Appeals ex-
pressly recognized that to confer jurisdiction here such
a question must involve a construction of the Constitu-
tion. That case was decided, as was the Tamm Case, prior
to the announcement of the doctrine (Dickey v. Holmes,
208 Mo. 664) that a previously settled question of consti-
tutional construction would not, of itself, confer juris-
diction upon this court. The opinion in Tinsley v. Kem-
ery, 170 Mo. 310, in this court, throws no additional light
upon the question or upon the Tamm Case. It cites the
Tamm Case and proceeds without further discussion of
the question of jurisdiction. In Lincoln Trust Co. v.
Nathan, 175 Mo. l. c. 41, the trial court had cancelled a
lease in which the rent reserved for the remainder of
the rental period amounted to several times the sum
necessary to give this court jurisdiction. It was re-
marked in the statement of the case that "the plaintiffs
demanded a trial by jury, which the court denied, and
the plaintiffs duly excepted. Hence the appeal to and
jurisdiction of this court." This is cited as authority
for the retention of jurisdiction in the instant case. The
court did not, in that case, mention the question of juris-
diction except as stated, and proceeded to determine the
cause. It nowhere discussed or construed the Constitution
or the question of jurisdiction. That decision contributes
nothing, in the way of reasoning, to the subject. The
quoted remark in the statement was wrong as appears
from what has already been said. One argument which
has been advanced for the retention of jurisdiction con-
tains a sentence which demonstrates the continuing ability
of Truth quickly to rise again after it has been crushed
to earth. That sentence, written with respect to refer-
ence cases and this case, is: "The thing which calls for
the construction and application of the constitutional pro-

vision is the denial of the constitutional right, and whether that right has been denied *depends upon the case made by the pleadings.*" Here is a concession that it is a construction of the pleadings which is involved. The implication that a simple denial of a constitutional right calls for a *construction* of the Constitution in every instance is refuted by this and many other cases. It may or may not call for such construction. If it calls for such construction, that serves to give this court jurisdiction. If the solution of the question based upon it does not call for such construction, then it does not give this court jurisdiction. The language of the Constitution is plain and unambiguous and susceptible of but one meaning. This court cannot amend it. Neither party, in the briefs, attempts to urge a construction of any provision of the Constitution. Neither party raises any question which calls for such construction. The record does not furnish a basis for any question which would do so. The court would not be called on to construe the Constitution even if it took jurisdiction.

The decision in State v. Keefe, 17 Wyo. l. c. 242, is drawn into the case. The statute (Sec. 4276, chap. 72, R. S. Wyoming 1899, as amended, Session Laws 1903, p. 78, now Sec. 6398, R. S. Wyoming 1920) under which the Supreme Court of Wyoming took jurisdiction in that case reads: "When an important and difficult constitutional question arises in an action or proceeding, pending before the district court . . . the judge of said court may . . . cause the same to be reserved and sent to the Supreme Court for its decision . . ." This statute gave the Supreme Court the only jurisdiction it had in that case. Whatever may be said as to its meaning it is undeniable that the statute does not expressly require the question reserved and certified to involve a construction of the Constitution. In that respect it differs from the provision of our Constitution relied upon to give jurisdiction in the instant case. In view of the actual situation in the Keefe Case this difference in language need not be discussed. In that case certified question "7"

was this: "Under Section 10, Article I, of the Consti-
tution granting to every defendant a speedy trial, has
the defendant, under the facts as set forth in the agreed
statement, had a speedy trial; and would he, if he were
to be tried at the present time, have a speedy trial, as
contemplated in Sections 5382 and 5384, Revised Statutes
1899; and should he, under the agreed statement of facts,
be discharged and not subjected to a trial under the in-
formation filed in this case?" The other questions con-
cerned a matter related to this. The court said: "The
questions thus stated require a consideration of the fol-
lowing constitutional and statutory provisions" and sets
them out; and then: "It is apparent that the ultimate
question here involved is whether upon the facts the delay
in prosecuting the defendant upon the pending infor-
mation has resulted in depriving him of the right to a
speedy trial *within the meaning of the constitutional pro-
vision*" (italics ours) "and, in that connection, whether
the statutory provisions quoted above were applicable to
the defendant during the term of his imprisonment in
the penitentiary, or whether the fact of his conviction,
sentence and imprisonment upon the one information
furnishes a sufficient excuse for not having brought him
to trial upon the other. Indeed, this is practically the
sole question that has been argued upon the merits of the
case." In the language just quoted the court was stat-
ing what question had been reserved and certified. That
question, as it stated it, is clearly one which involved the
construction of the Constitution of Wyoming. This is
too plain to require argument or citation. This part of
the opinion in the Keefe Case is the only part relevant
to the character of the question before the Wyoming
Court. The part of the opinion brought forward as
authority for the retention of jurisdiction is in no way
concerned with the *character* of the constitutional ques-
tion there presented. This becomes evident from an ex-
amination of the rule of jurisdiction under the statute
above set out, as that rule is laid down in the Wyoming
decisions, and a consideration of the question of jurisdic-

tion raised and what the court said about it in the Keefe Case. In exercising its jurisdiction to pass upon reserved questions the Supreme Court of Wyoming strictly restricted itself to the exact questions certified. Grand Island & N. Wyo. Rd. Co. v. Baker, 6 Wyo. l. c. 376; Rasmussen v. Baker, 7 Wyo. l. c. 149); required these questions to be specific in character (Jenkins v. Cheyenne, 12 Wyo. l. c. 79, 80; Smith v. Healy, 12 Wyo. l. c. 222), and refused jurisdiction unless the question reserved was actually involved in an "action or proceeding;" and, in the case of a constitutional question (under the amended statute), required that question to be necessary to a decision in the district court; and held that such question was not necessary, in the sense of the statute, if there were other questions involved in the case, the determination of which by the district court might dispose of the case without regard to the constitutional question. [State v. Kelley, 17 Wyo. l. c. 343-344.] In the Keefe Case this rule was invoked. It was with respect to this rule that the court wrote that part of the opinion which has been suggested as showing jurisdiction in this court in the instant case. Counsel had suggested that the case "seemed to require nothing beyond a construction of the statute" and, therefore, there was nothing to give jurisdiction. In discussing this question the Wyoming court was not called upon to consider the *character* of the constitutional question reserved. It had already fully stated its view of that. It was necessary, in that connection, for it to use language to characterize the reserved question as "constitutional" as distinguished from the question of "statutory" construction which counsel had suggested was all that was in the case. It was in this connection and with this purpose that the court used the language quoted in the dissent and that language has no relevance to the question whether, in Wyoming, under the statute, a "constitutional question" must or must not involve a *construction* of the Constitution. The question considered did involve such

construction and, so far as a fairly careful examination of Wyoming decisions, under the amended statute, shows the court has not, since 1903, taken jurisdiction to decide a reserved question which did not involve a construction of the Constitution of that state. In Commissioner v. Railroad, 25 Wyo. l. c. 464, the constitutionality of Chapter 55, Session Laws 1915, was involved. In State v. Peterson, 27 Wyo. l. c. 193, 194, and the cases argued with it, the constitutionality of the search-and-seizure provisions of the Wyoming Prohibition Act of 1919 was involved. In Budge v. Commrs., 29 Wyo. l. c. 43, the constitutionality of other statutes was involved.

In Dorrance v. Dorrance, 242 Mo. l. c. 643 et seq., cited in the dissent, the question of the constitutionality of Section 2932, Revised Statutes 1899, was explicitly raised. The court held that "construction" of the Constitution included (1) interpretation and (2) application of the interpreted language to "the subject-matter and attendant circumstances." The real gist of the contention that this court has jurisdiction in this case is that there can be a question involving a "construction" of the Constitution which has to do solely with the application of the constitutional language, i. e. that which does not involve "construction." The Dorrance Case denies this, as does the constitutional provision respecting jurisdiction itself. The question in the Dorrance Case respecting the efficacy of a constitutional question to give jurisdiction, though the decision of it might be adverse to the contention of the party who raised the question, has nothing to do with the present difference of opinion and it has not been questioned in this case.

The case is transferred to the Kansas City Court of Appeals. *David E. Blair, White* and *Ragland, JJ.*, concur; *Graves, C. J.*, and *Walker* and *Woodson, JJ.*, dissent, *Graves, C. J.*, in separate opinion to be filed.

GRAVES, C. J. (dissenting)—This case now passes off upon the single question that this court is without

jurisdiction. If the amount involved was to determine our jurisdiction there would be an absence of jurisdiction. But there was a demand for a jury by the losing party *nisi*. This demand was refused, and the constitutional question was injected into the case and preserved throughout. The court *nisi* is alleged to have denied the jury upon the ground that there was an equitable defense interposed. If there was in fact a constitutional question involved, the jurisdiction is here for all purposes. This is hornbook law.

The majority opinion undertakes to dispose of the matter by denominating the action of the court as mere error. The refusing of any constitutional right is error upon the part of the trial court, but if the question is properly lodged in the case it is a right which the litigant is entitled to have determined by the Supreme Court. The Constitution gives to this court jurisdiction "in cases involving the construction of the Constitution of the United States, or of this State."

The word "construction" as herein used does not mean that you have to make an analysis of the language of the Constitution, and there stop. Usually the words of the constitutional provision are so simple, concise and plain, that their meaning appears upon the face of it at a glance. Such is true of the right to trial by jury and due process of law. But what is meant by the word "construction" as used in our organic law, is that the courts shall take the plain language of the Constitution alleged to have been violated (in this case the provision as to a jury) along with all the facts and circumstances, and from them all say whether or not a constitutional right has been invaded. Sometimes the surrounding circumstances include both a pleading and a statute. Such was the situation in Ice Co. v. Tamm, 138 Mo. 1. c. 387. Sometimes it only involves the construction of a statute, as in Dorrance v. Dorrance, 242 Mo. 1. c. 644, whereat it is said:

"There can be no question that the court, in sustaining the demurrer, did so upon the ground that

the statute so pleaded by the appellant was valid and constitutional; that it applies to the judgment in question, and protects it against this proceeding in equity to set it aside. A careful examination of the briefs of the parties shows that this is the theory upon which the issues raised by the petition and demurrer were tried, and are presented here."

But there is no better discussion of what is meant by the word "construction" as used in our Constitution, than is given by Brown, J., in this Dorrance Case, and at the expense of brevity we quote as follows:

"As we have already suggested, the Constitution of this State provides that the Supreme Court shall have exclusive jurisdiction 'in cases involving the construction of the Constitution of the United States, or of this State.' Construction is a broad term, and perhaps as instructive a definition as could be stated is quoted from Abbott in Webster's International Dictionary as follows: 'Strictly, the term [construction] signifies determining the meaning and proper effect of language by a consideration of the subject-matter and attendant circumstances in connection with the words employed.' In other words, it does not stop with interpretation, but applies the language as interpreted to both the subject-matter and the attendant circumstances. The constitutional provision does not, to give this court jurisdiction in this case, require findings that some constitutional provision has been violated, or constitutional right denied, for that is the ultimate object for which the jurisdiction exists. It is only necessary that a constitutional question be presented to the court in the manner required by the rules governing its practice, and on its presentation the jurisdiction attaches to determine it. This is made clear by Mr. Justice Harlan in Insurance Company v. Needles, 113 U. S. 574. He said: 'Our jurisdiction is not defeated, because it may appear, upon examination of this Federal question, that the statutes of Illinois are not repugnant to the provisions of that instrument. Such an examination itself involves the

exercise of jurisdiction.' The jurisdiction does not depend upon the validity of the claim set up under the Constitution or laws. It is enough if the claim involves a clear, and substantial dispute or controversy.''

If we read English right a ''construction'' of our Constitution is involved if we have to look at the language of the organic law, and compare its language with the circumstances of the case in order to determine whether or not there is a constitutional right invaded. In the Dorrance Case we looked into the pleaded facts as to the service in the divorce case and found, under the allegations in the petition, the service to have been procured by false swearing and fraud, which facts stood admitted by the demurrer. We also concluded that the trial court sustained the demurrer because such court found and believed Section 2932, Revised Statutes 1899, forbid the setting aside of the divorce decree, after the end of the term. With all these facts (including the statute) it was charged that if this statute precluded the right to have the decree set aside then such statute violated the due process clause of the Federal Constitution. We ruled that the statute did not apply to the case, and thereby corrected the error (as would be urged under the majority opinion) of the trial court, but we did rule that there was a constitutional question so as to give us jurisdiction. We did consider the simple language of the Constitution along with the other alleged facts to determine jurisdiction. We only construe constitutions when their meaning is invoked by the circumstances of the case. The way we construe it is by examining the circumstances, and by then saying under these circumstances the simple mandate of the Constitution has been invaded. We don't write a philippic or a eulogy upon the few simple words of the organic law, nor do we analyze them with pedagogical exactness and narrowness. Such does not fall within the meaning of ''construction'' as given in the books. Let me reiterate here, that the only way a constitutional provision is construed (or subjected to construction) is

to apply the facts and circumstances in the case to the language of the Constitution, and from it all determine whether or not a constitutional right is invaded. This is the definition of the word "construction" given the Dorrance Case, supra.

Let us view the case of State v. Keefe, 17 Wyo. 227, for a moment. The facts are few and simple. Keefe was convicted and sent to the penitentiary for four years for manslaughter. At the time there were other charges of a more serious nature against him. There are in Wyoming statutes providing for giving a criminal a speedy trial, just as we have in this State, and which were discussed by us in State ex rel. Stevens v. Wurdeman, 295 Mo. 566. The only difference is that the Wyoming statutes are shorter terms of limitations. They have there as here a constitutional provision for a speedy trial. After all these statutes had run, whilst Keefe was in the penitentiary, and when the time was about to arrive for his liberty, Keefe, through his counsel, moved for a discharge from other pending charges, and that court had best speak the facts from hence on, as follows:

"It is apparent that the ultimate question here involved is whether upon the facts the delay in prosecuting the defendant upon the pending information has resulted in depriving him of the right to a speedy trial within the meaning of the constitutional provision, and, in that connection, whether the statutory provisions quoted above were applicable to the defendant during the term of his imprisonment in the penitentiary, or whether the fact of his conviction, sentence and imprisonment upon the one information furnishes a sufficient excuse for not having brought him to trial upon the other. Indeed, that is practically the sole question that has been argued upon the merits of the case, it being contended on the one hand that the defendant having been in prison comes strictly within the provisions of Sections 5382 and 5384, and on the other that while in the penitentiary serving the sentence imposed upon his conviction of another offense, the statute

did not apply, because he was not then and there detained by virtue of any commitment upon the pending information.

"A preliminary question of jurisdiction has been suggested. While expressing a preference that the question be decided upon this hearing, thereby saving the prosecution as well as the defendant much trouble and expense should the defendant be entitled to be discharged, counsel for the State suggest that the questions reserved for decision seem to require nothing beyond the construction of the statute, and that since constitutional questions only are authorized by law to be brought here in this manner for decision, the jurisdiction of the court is doubtful.

"But we entertain no doubt of the jurisdiction of the court in this proceeding. It is true that none but a pending constitutional question may be reserved and sent to this court for decision upon the order of a district court. [R. S. 1899, sec. 4276, as amended by Ch. 72, Sess. Laws 1903.] But the questions here reserved are clearly constitutional, for they involve the constitutional right of an accused in a criminal prosecution to a speedy trial, which right is claimed to have been violated in this case. The statute supplements the constitutional provision and secures or provides a method for securing the right thereby declared. It is to be regarded as enacted for the purpose of rendering the constitutional guaranty effective, and as a legislative declaration of what is and what is not, under the circumstances named, a reasonable and proper delay in bringing an accused to trial in respect of his constitutional right aforesaid."

The court looked at both the facts and the statutes, and from them all concluded that Keefe had not been given his constitutional right of a speedy trial, closing their opinion with this language:

"The court decides that the fact of defendant's imprisonment in the penitentiary, under the circumstances set forth in the agreed statement of facts, does

not constitute a sufficient defense to the application of the defendant for his discharge; that Sections 5382 and 5384 apply to the defendant, and upon the facts the defendant has not had a speedy trial, as provided in the Constitution.''

The statutes mentioned were the statutes providing when criminals should be brought to trial. In other words, the court said that under all the circumstances the defendant did not receive a speedy trial under the simple language of the Constitution. The court construed the constitutional provision along with the facts of the situation, as is the only method of giving construction to a constitutional provision.

The following additional cases from Missouri are applicable, and some in exact point. [Tinsley v. Kemery, 83 Mo. App. l. c. 97; Tinsley v. Kemery, 170 Mo. 310, where we tried out the case in our court; Lincoln Trust Co. v. Nathan, 175 Mo. l. c. 41.] The latter case only involved $1200 but (as in the case at bar) contained an alleged answer in equity. In that we said:

''The case came on for trial on October 22, 1900, and the plaintiffs demanded a trial by jury, which the court denied, and the plaintiffs duly excepted. Hence the appeal to *and jurisdiction of this court.*''

We shall go no further. We do earnestly contend that the only ''construction'' which can be given to a constitutional provision, is by taking all the facts in a case (sometimes pleadings alone, sometimes statutes alone, and sometimes both combined) and from all the facts determine whether or not a constitutional right has been invaded. This is when we have a ''construction'' of the organic law. And when such a ''construction'' is demanded by a proper preservation of the point (as we have in the instant case) then the Supreme Court has jurisdiction for all purposes. I therefore dissent. *Walker* and *Woodson, JJ.,* concur in these views.