## McKNETT v. ST. LOUIS & S. F. RY. CO.

### 6 Div. 321.

Supreme Court of Alabama.

June 9, 1933.

Rehearing Denied Oct. 12, 1933.

London, Yancey & Brower and J. Kirkman
Jackson, all of Birmingham, for appellant.

Cabaniss & Johnston and L. D. Gardner, Jr., all of Birmingham, for appellee.

FOSTER, Justice.

This action is alleged to have arisen in Tennessee under the Federal Employers' Liability Act (45 USCA §§ 51–59) against appellee, a foreign corporation doing business in Alabama, as an interstate carrier. Defendant pleaded in abatement that the cause of action did not arise in Alabama, and that it did not exist either by authority of the common law or the statutes of Tennessee, but arose under the Federal Employers' Liability Act, and that section 5681, Code, did not apply, and the courts of Alabama had no jurisdiction.

By its terms that section only applies to actions which arose in another state either by common law or the statutes of that state. While the Federal Employers' Liability Act (45 USCA §§ 51–59) is a statute which is effective in Tennessee, as elsewhere in the several states, it was not enacted by the Legislature nor by any constitutional convention of that state; nor is its effectiveness there dependent upon any sort of state action or recognition. It is wholly beyond the authority of the state that it is a law.

We do not therefore think that the Legislature of Alabama in enacting what is section 5681, Code, intended that its language should have a meaning broader than that ordinarily to be understood by its common or general use. Since the cause of action is not there included, the plea in abatement is available, for prior to the authority of that enactment, it was held that an action on a claim which did not arise in Alabama could not be maintained in its courts against a foreign corporation without its consent. C. R. R. & B. Co. v. Carr, 76 Ala. 388, 52 Am. Rep. 339; Pullman Palace Car Co. v. Harrison, 122 Ala. 149, 25 So. 697, 82 Am. St. Rep. 68; Dozier Lumber Co. v. Smith, etc., Lumber Co., 145 Ala. 317, 39 So. 714; Southern Railway Co. v. Jordan, 192 Ala. 528, 68 So. 418. Such was the ruling of the circuit court, and it is affirmed.

Affirmed.

All the Justices concur.

On Rehearing.

PER CURIAM.

We are of the opinion the conclusion reached in the original opinion is correct. The authorities cited therein, which need no repetition here, demonstrate that the matter of jurisdiction is dependent upon section 5681, Code 1923, which for convenience is here reproduced: "Whenever, either by common law or the statutes of another state, a cause of action, either upon contract, or in tort, has arisen in such other state against any person or corporation, such cause of action shall be enforcible in the courts of this state, in any county in which jurisdiction of the defendant can be legally obtained in the same manner in which jurisdiction could have been obtained if the cause of action had arisen in this state."

We are concerned first with the proper construction of this statute. It is the general rule that words in common use are to be given their natural, plain, ordinary, and commonly understood meaning. Edwards v. Doster-Northington Drug Co., 214 Ala. 640, 108 So. 862; 59 Corpus Juris 975.

The words of the above-noted section, upon which rest the question of jurisdiction in this particular case, are "the statutes of another state," and the case turns upon the true meaning thereof. It has been expressly held, and we think correctly so, that the natural meaning of "statute of a state," is a statute or law enacted directly by the Legislature of the state. Discussing a statute in which these words were used, the court in Cumberland Tel. & Tel. Co. v. City of Memphis (D. C.) 198 F. 955, 957, said: "The natural meaning of 'statute of a state' is a statute or law directly passed by the Legislature of the state, and the natural meaning of 'any officer of such state' is an officer whose authority extends throughout the state, and is not lim-

ited to a small district; and * * * that Congress used these phrases with this natural meaning, rather than with the broader and less obvious meaning which trained lawyers might find therein." Giving therefore to the words "statutes of another state" their natural meaning (and we find nothing upon which to base a contrary interpretation), a federal statute is excluded.

The dissenting view appears to rest upon the assumption that such an interpretation would run counter to the intent of Congress and would not harmonize with the cases of Mondou v. N. Y., N. H. & H. R. R. Co., 223 U. S. 1, 32 S. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44, Murnan v. Wabash Ry. Co., 246 N. Y. 244, 158 N. E. 508, 509, 54 A. L. R. 1522, and Walton v. Pryor, 276 Ill. 563, 115 N. E. 2, 4, L. R. A. 1918E, 914. But we think this is a mistaken interpretation of these authorities.

■ It must first be noted that the question whether the circuit court had jurisdiction is to be determined by the Constitution and laws of this state creating the courts and defining and limiting their jurisdiction. There is no restriction of the Federal Constitution upon the power of a state to determine the limits of the jurisdiction of its courts, except that the state must give to the citizen of other states the same rights that it accords to its own citizens.

So far as concerns this case, therefore, the authority of the state through its Legislature to limit its jurisdiction, as above indicated, is well established, for, as said by the United States Supreme Court in St. L., I. M. & S. R. R. Co. v. Taylor, 210 U. S. 281, 28 S. Ct. 616, 617, 52 L. Ed. 1061, "Each state may, subject to the restrictions of the Federal Constitution, determine the limits of the jurisdiction of its courts, the character of the controversies which shall be heard in them, and, specifically, how far it will, having jurisdiction of the parties, entertain in its courts transitory actions where the cause of action has arisen outside its borders." And to like effect was the holding in Chambers v. B. & O. R. R. Co., 207 U. S. 142, 28 S. Ct. 34, 52 L. Ed. 143, all of which was fully discussed by the Illinois case of Walton v. Pryor, supra, wherein the Mondou Case, supra, is considered, and wherein it is pointed out that Congress had no authority and made no effort to prescribe the jurisdiction of a state court. That was a matter for the state and the state only, and presenting no federal question. And as further illustrating this fact, the Illinois court quotes and comments upon the Mondou Case as follows:

"One of the questions considered by the Supreme Court of the United States was this: 'May rights arising under those regulations be enforced as of right in the courts of the states when their jurisdiction, as fixed by local laws, is adequate to the occasion?' On that question the court said: 'There is not here involved any attempt by Congress to enlarge or regulate the jurisdiction of state courts or to control or affect their modes of procedure, but only a question of the duty of such a court, when its ordinary jurisdiction as prescribed by local laws is appropriate to the occasion and is invoked in conformity with those laws, to take cognizance of an action to enforce a right of civil recovery arising under the act of Congress and susceptible of adjudication according to the prevailing rules of procedure. We say "when its ordinary jurisdiction as prescribed by local laws is appropriate to the occasion," because we are advised by the decisions of the Supreme Court of errors that the superior courts of the state are courts of general jurisdiction, are empowered to take cognizance of actions to recover for personal injuries and for death, and are accustomed to exercise that jurisdiction, not only in cases where the right of action arose under the laws of that state, but also in cases where it arose in another state, under its laws, and in circumstances in which the laws of Connecticut gave no right of recovery.' The court being advised that the courts of Connecticut had jurisdiction of actions for personal injuries and for death in cases where the right of action arose under the laws of that state, and also, in cases where it arose in another state and under the laws of the other state where the laws of Connecticut gave no right of recovery, held that the courts of that state were bound to exercise the same jurisdiction to enforce a liability under the federal act.

"Section 6 of the federal act, as amended in 1910 [45 USCA § 56], contains this provision: 'The jurisdiction of the courts of the United States under this act shall be concurrent with that of the courts of the several states, and no case arising under this act and brought in any state court of competent jurisdiction shall be removed to any court of the United States.' In view of the powers of the federal government and the states and in the light of the uniform decisions relating to the subject, this provision can only mean that when the jurisdiction of the courts of a state as fixed by local laws empowers them to hear and determine a certain class of actions, an action of that class arising under federal law may be enforced as of right in the state court. * * *

"The Supreme Court of the United States has said that there has been no attempt of Congress to enlarge the jurisdiction of the state courts, but only to require its exercise consistently with local laws, and the enforcement of liability for damages occasioned by a death outside of the state is not consistent with such laws."

And the Court of Appeals of New York in Murnan v. Wabash Rwy. Co., supra, likewise makes it clear that the jurisdiction of the

state courts is a matter for the state to determine, and that Congress had no right and made no attempt to invade such powers of the state. The court there points out that in all tort cases where one nonresident sues another under the laws of another state, the courts of that state exercise a discretion as to whether or not the suit will be entertained. The Appellate Division (220 App. Div. 218, 221 N. Y. S. 332) had held that the Federal Employers' Liability Act (45 USCA §§ 51–59), which recognized concurrent jurisdiction in the state court, made it mandatory upon the state court not to refuse to exercise its jurisdiction in any case brought under the act. But the Court of Appeals repudiated this holding and ruled that the state court would entertain jurisdiction only as it did in any other case, and that such action is to be governed solely by the law of the state. Answering the opinion of the Appellate Division, the Court of Appeals said:

"It relied on the case of Mondou v. N. Y., N. H. & H. R. R. Co., 223 U. S. 1, 58, 32 S. Ct. 169, 178, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44. The case is authority for the bare proposition that, where the state courts would exercise their jurisdiction except for the fact that the action is brought under the act of Congress, they may not refuse to exercise jurisdiction because the action is brought under the laws of the United States. The court said: 'The existence of the jurisdiction creates an implication of duty to exercise it. * * * We conclude that rights arising under the act in question may be enforced, as of right, in the courts of the states when their jurisdiction, as prescribed by local laws, is adequate to the occasion.'

"This general language read in connection with what was actually decided means nothing more than that the state courts must make no hostile discrimination against litigants who come within the act in question; that they must treat litigants under the federal act as other litigants are treated; that they are to act in conformity with their general principles of practice and procedure and are not to deny jurisdiction merely because the right of action arises under the act of Congress.

"The court seems to make this meaning clear. It says, in substance, that it is advised by decisions of the Supreme Court of Errors that the Superior Courts of the state of Connecticut are not only empowered to take cognizance of actions to recover for personal injuries and death, but are accustomed to exercise that jurisdiction in cases where the right of action arises under the laws of another state. It says further: 'We deem it well to observe that there is not here involved any attempt by Congress to enlarge or regulate the jurisdiction of state courts, or to control or affect their modes of procedure, but only a question of the duty of such a court,

when its ordinary jurisdiction, as prescribed by local laws, is appropriate to the occasion, and is invoked in conformity with those laws, to take cognizance of an action to enforce a right of civil recovery arising under the act of Congress, and susceptible of adjudication according to the prevailing rules of procedure.'

"The courts of New York exercise their discretion in all other cases where a tort action is brought by one nonresident against another under the laws of another state. The practice may be anomalous, but it is well established. That Congress has undertaken to regulate the exercise of jurisdiction by our courts by making compulsory what in other similar cases is discretionary seems an unreasonable conclusion and a resulting invasion of the powers of our tribunals as heretofore exercised. We conclude that a litigant who brings his action under the federal Employers' Liability Act [45 USCA §§ 51–59] stands before the court in no different attitude than a litigant who brings his action under the statute of a sister state. He may not be cast out because he is suing under the act of Congress. He may not enforce his rights merely because he is suing under the act."

The Mondou Case, supra, as stressed by the Illinois and New York cases, made it clear that no invasion of state power over the matter of jurisdiction of its courts was intended, but only that the courts of the state, which by local law have jurisdiction of the causes of action, are not to be permitted to discriminate against entertaining an action merely because it is rested under a federal statute. The prohibition of discrimination was against the court, the local laws allowing jurisdiction, and the courts accustomed to enforce it. But the Mondou Case, supra, emphatically disavowed any congressional intent "to enlarge or regulate the jurisdiction of state courts, or to control or affect their modes of procedure."

As above noted, the question of jurisdiction of the state courts is a state matter and not a federal question. This state (so far as concerns this particular case) has limited the jurisdiction of its courts by statute, hereinabove quoted, to causes arising under the "statutes of another state," and we think it clear this language excludes a federal statute. This the state had a right to do, and the Mondou Case, supra, discloses that Congress had no intention to invade this authority. We interpret the words of our statute, "statutes of another state," as meaning a statute or law directly passed by the Legislature of the state. To hold, as indicated, in the dissenting opinion, that anything in the federal act forces a contrary construction, is but to yield the state power to the federal power, when, as shown in the Mondou Case, supra, Congress had no intention to invade such power.

Our statute is plain and unambiguous, and we have given to the language its plain ordinary meaning. To accept a contrary construction merely because of the federal act would but amount to a surrender of the state power in the matter of fixing the limitation of the jurisdiction of its courts. Congress had no such limitation and made no such effort. In the Mondou Case, supra, local laws permitted the action, and the declination of the state court to entertain the suit merely because based on the federal statute was held to be an unwarranted discrimination by the court; but that decision in no manner affects the instant case wherein this court is engaged in no discrimination, but only construing and enforcing its own statutory provisions. No such question was presented in the Mondou Case, and the opinion of the Illinois and New York courts in the cases noted above demonstrate that neither the federal act nor the decision in the Mondou Case was intended in any manner to question the authority of the state, through its lawmaking body, to fix the jurisdictional limits of its own judicial tribunals.

We therefore conclude the original opinion is correct, and should be adhered to.

The application for rehearing is overruled.

ANDERSON, C. J., and GARDNER, BOULDIN, THOMAS, and KNIGHT, JJ., concur.

BROWN and FOSTER, JJ., dissent.

FOSTER, Justice (dissenting).

While I wrote the opinion on the original hearing, my judgment, shared in by Justice BROWN, then was that the interpretation given section 5681, Code, was not the best, but the majority of the court did not agree with us and we concurred in the construction given it by them.

Our attention is now called to the holding that one whose claim is under the Federal Employers' Liability Act (45 USCA §§ 51–59) must be held to stand in no different attitude in respect to his right to maintain suit in a state court than one who brings his action under the statute of a sister state, for "He may not be cast out because he is suing under the act of Congress," and "He may not enforce his rights merely because he is suing under the act." Murnan v. Wabash R. R. Co., 246 N. Y. 244, 158 N. E. 508, 509, 54 A. L. R. 1522.

It was also said by the United States Supreme Court in Mondou v. New York, N. H. & H. R. Co., 223 U. S. 1, 32 S. Ct. 169, 179, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44, in respect to the right of a litigant to maintain suit in a state court upon a claim which arose under the Federal Employers' Liability Act, "We conclude that rights arising under the act in question may be enforced, as of right, in the courts of the states when their jurisdiction, as prescribed by local laws, is adequate to the occasion," and held further that state "courts of general jurisdiction, are empowered to take cognizance of actions to recover for personal injuries and for death, and are accustomed to exercise that jurisdiction, not only in cases where the right of action arose under the laws of that state, but also in cases where it arose in another state, under its laws, and in circumstances in which the laws of Connecticut [the state in which suit was brought, different from that in which the action arose] give no right of recovery, as where the causal negligence was that of a fellow servant," cannot withhold its jurisdiction of an action which arose in another state under the Federal Employers' Liability Act (45 USCA §§ 51–59). This conclusion and result were given effect in Walton v. Pryor, 276 Ill. 563, 115 N. E. 2, L. R. A. 1918E, 914.

I think it would be an unwarranted discrimination to construe our statute so as to open the doors of our state courts to torts committed in another state which exist by virtue of the common law of that state or of statutes enacted by its Legislature, and shut the door against those which exist in that state by virtue of an act of Congress, there effective, unless the language of the law can have no other meaning.

It was said in Claflin v. Houseman, 93 U. S. 130, 137, 23 L. Ed. 833, 838, 839, that: "The two together [the laws of the United States and those of the state] form one system of jurisprudence, which constitutes the law of the land for the state"—cited in Mondou v. N. Y., N. H. & H. R. R. Co., supra.

Again it has been held by the same court that an enactment to which the state gives the force of law is a statute of that state though not originating in its Legislature. Williams v. Bruffy, 96 U. S. 176, 183, 24 L. Ed. 716; N. O. Water-Works Co. v. La. Sugar Ref. Co., 125 U. S. 18, 8 S. Ct. 741, 31 L. Ed. 607.

For those reasons I cannot accept the theory that section 5681, Code, does not here have effect.

BROWN, J., concurs in the foregoing dissent.