106 So.2d 407 (1958)
Helen ARMSTRONG, Mary W. McKenzie, Clara Einhorn, Nancy Stroup and Jimmie C. Rozier, Appellants,
v.
CITY OF TAMPA, Florida, a municipal corporation, and John D. Latture, as Chief of Police of said City, Appellees.
Supreme Court of Florida.
November 14, 1958.
Mabry, Reaves, Carlton, Fields & Ward and J.A. McClain, Jr., Tampa, for appellants.
Ralph A. Marsicano, Neil C. McMullen, William R. McCown and James M. McEwen, Tampa, for appellees.
THORNAL, Justice.
The appellants who were plaintiffs below seek reversal of a final decree sustaining the validity of a city occupational license tax ordinance.
Numerous grounds for reversal are cited. However, we are confronted by a jurisdictional problem which precludes any exploration into the merits of the controversy.
The appellant Armstrong is a salaried employee of Avon Products, Inc., a New York corporation engaged in the manufacture and sale of cosmetics. Mrs. Armstrong resides in Tampa. Her function is to select and train district managers for *408 Avon. The other appellants reside either in Tampa or some other place in Hillsborough County. They engage in the solicitation of orders for Avon Products, Inc. The City of Tampa, pursuant to ordinance, undertook to collect from the appellants a flat sum license tax and a sliding scale tax based upon gross sales. The appellants sought an injunction against enforcement of the ordinance. The contended by their complaint that, as applied to them, the taxing ordinance would be violative of Article I, Section 8, and Article IV, Section 2, of the Constitution of the United States, Section 1 of the Fourteenth Amendment to the Constitution of the United States, and Section 1 of the Declaration of Rights of Florida, F.S.A. By the final decree the Chancellor concluded that the activities of the appellants constituted "a separable intrastate incident" which would legitimately subject them to the payment of the occupational license taxes. The ordinance was held valid and the complaint was dismissed. Reversal of this decree is now sought.
The notice of appeal was filed May 21, 1958. Our preliminary examination of the record suggested a lack of jurisdiction in this court under Article V, Section 4, Florida Constitution. The parties were requested to file briefs and orally argue the jurisdictional aspects of the matter preliminary to their discussion of the merits. This they have done.
We are compelled to conclude that the record on appeal reveals that it should be considered by the appropriate district court of appeal rather than this court. Since July 1, 1957, when Amended Article V of the Florida Constitution became effective, we have been confronted on numerous occasions with the problem of determining the existence of jurisdiction in view of the limits within which our jurisdiction has been confined by the cited constitutional provision. We continue to proceed through this period of transition with the realization that often times the problem cannot easily be resolved by the members of the Bar who bring the cases to us. Our consideration of these problems is also influenced by the proposition that we should cautiously avoid encroachment upon the jurisdiction of the several courts of appeal. This is prompted by the fact that those courts are in most instances appellate courts of last resort. If we and the Bar fail to take full cognizance of this proposition we run the risk of converting the courts of appeal into mere intermediate steps in the appellate process. This in turn would have the effect of completely destroying the significant improvements in the administration of justice implicit in Amended Article V, supra. Only by scrupulously observing the proper limits of our jurisdiction can we bring about the more effective and expeditious consideration of cases at the appellate level which was a prime objective of Amended Article V.
Appellants ask us to take jurisdiction under that portion of Section 4, Article V, supra, authorizing direct appeals to this court as a matter of right from "decrees directly passing upon the validity of a state statute * * * or construing a controlling provision of the Florida or federal constitution * * *." We are referred to the fact that the decree under assault passed directly upon the validity of a municipal ordinance. We are then requested to hold that for purposes of determining our appellate jurisdiction a municipal ordinance is comprehended within the expression "a state statute". As an alternative support for their position, the appellants further suggest that our jurisdiction is sustained by the proposition that in their view the Chancellor entered a decree "construing a controlling provision of the Florida or federal constitution".
We consider first the contention that "a state statute" as used in the Constitution should be considered as comprehending a municipal ordinance for the purpose of determining jurisdiction in this court. We are compelled to hold that we are not privileged to extend to the constitutional language so broad an interpretation. In the first place the Constitution *409 is explicit in its reference to "a state statute". We have the view that it was intended by this language to provide a forum at the highest appellate level within which the validity of enactments by the State Legislature could be promptly and finally determined. Admittedly for some purposes in the Federal court system municipal ordinances are considered within the category of state statutes in determining Federal jurisdiction. However, we think it clear from an examination of our own cases as well as the decisions of other state courts, and in numerous instances many of the Federal courts, a municipal ordinance is not comprehended within the definition of a state statute. For example, in Washington v. Dowling, 92 Fla. 601, 109 So. 588, 591, this court held that "`A statute is an act of the Legislature as an organized body * * *.'" In City of Miami v. Rosen, 151 Fla. 677, 10 So.2d 307, we held that municipal ordinances while effective as legislation within the municipal limits, nevertheless do not enjoy the governmental dignity of legislative enactments. Similarly, other courts have denied to municipal ordinances the dignity implicit in a state statute. Werner v. Pioneer Cooperage Co., Mo. App., 155 S.W.2d 319; McKnett v. St. Louis & S.F.R. Co., 227 Ala. 349, 149 So. 822; Cumberland Tel. & Tel. Co. v. City of Memphis, D.C., 198 F. 955.
We therefore hold that a municipal ordinance is not included in the expression "a state statute" as used in our constitutional provision authorizing direct appeals to this court.
We come now to the alternative contention of the appellants that the final decree construed "a controlling provision of the Florida or federal constitution". The problem presented by this suggestion is not without difficulty. Our study of the decisions of courts of other states operating under very similar constitutional provisions leads us to the conclusion that in order to sustain the jurisdiction of this court under the quoted provision it is necessary that the final decree under assault actually construe, as distinguished from apply, a controlling provision of the Constitution. We had occasion to consider the matter in Milligan v. Wilson, Fla. 1958, 104 So.2d 35; and in Carmazi v. Board of County Commissioners, Fla. 1958, 104 So.2d 727. In the cited cases we undertook to point out that the mere fact that a constitutional provision is indirectly involved in the ultimate judgment of the trial court does not in and of itself convey jurisdiction by direct appeal to this court. We agree with those courts which hold that in order to sustain the jurisdiction of this court there must be an actual construction of the constitutional provision. That is to say, by way of illustration, that the trial judge must undertake to explain, define or otherwise eliminate existing doubts arising from the language or terms of the constitutional provision. It is not sufficient merely that the trial judge examine into the facts of a particular case and then apply a recognized, clear-cut provision of the Constitution. The case now before us is illustrative. Here, the Chancellor took an agreed state of facts and concluded that the appellants were engaged in "a separable intrastate" transaction that precluded the necessity of applying those provisions of the United States Constitution dealing with interstate commerce or the privileges of citizens as between the several states. On the same factual basis he concluded that it was not necessary to apply Section 1 of the Declaration of Rights of Florida. Nowhere in the final decree did the Chancellor undertake to construe, explain or define the language of the state or federal constitution.
The provisions of the Constitution of the State of Missouri covering the jurisdiction of the Supreme Court of that state require among other things that the question presented must be one "involving the construction of the Constitution of the United States or of this state". V.A.M.S.Const. art. 5, § 3. In Wolf v. Hartford Fire Ins. Co., 304 Mo. 459, 263 S.W. 846, it was pointed out that under this language the mere fact that *410 a constitutional right has been denied by the trial court does not in and of itself remove the case from the jurisdiction of the courts of appeal. The denial of such a right may be error but the forum to review the error is the one provided by the Constitution itself. In other words, actual construction of the language of the Constitution, either state or federal, must be involved to justify the jurisdiction of the Supreme Court. It is not sufficient to sustain our jurisdiction merely to point to a set of facts and contend that the trial judge failed to apply correctly a recognized provision of the Constitution. To convey jurisdiction to this court by direct appeal it is necessary that the trial judge actually construe or interpret a section of the Constitution and then apply his construction to the factual situation presented to him. Any contrary view could conceivably result in bringing practically every erroneous decree or judgment directly to this court. This is so because it could be contended that in practically every instance where error has been committed the offended party has in some measure been denied due process of law. Hence, because of the denial he might well contend that the due process clause of the Constitution had been "construed" and that jurisdiction here resulted. Certainly, such a situation was not contemplated by the recent Amendment to the Judiciary Article of our Constitution. We find further support for this view in the opinion of the Supreme Court of Missouri in Corbett v. Lincoln Savings & Loan Ass'n, Mo. 1928, 4 S.W.2d 824.
The language of the Constitution of Georgia endows the Supreme Court of that state with jurisdiction "in all cases that involve the construction of the Constitution of the State of Georgia or of the United States". Const.Ga. art. 6, § 2, par. 5.
In Dade County v. State, 1946, 201 Ga. 241, 39 S.E.2d 473, the Supreme Court of Georgia held that jurisdiction is not vested in that court merely because it is contended that the decree of a trial court would be contrary to some provision of the Constitution. In other words, jurisdiction does not arise by virtue of the applicability of plain and unambiguous constitutional provisions to a given state of facts. The word "construction" of the Constitution contemplates an interpretation of the meaning of the language of some constitutional provisions which is doubtful either by its own content or as the result of some decision of the Supreme Court of the state or of the United States.
Jurisdiction of the courts of appeal is not to be denied or ignored merely because a case involves the application of unambiguous provisions of the Constitution to a given state of facts. Thompson v. State, 1945, 199 Ga. 250, 33 S.E.2d 903.
Consistent with the views which we have heretofore expressed in Milligan v. Wilson, supra, and Carmazi v. Board of County Commissioners, supra, we are compelled to conclude that we are without jurisdiction to determine the merits of the appeal in the instant case. We realize the importance of the cause to the particular litigants and can appreciate their desire to have it determined by this court. We are not, however, permitted to indulge ourselves the luxury of being accommodating. We have no discretion in the matter in view of the explicit language of the organic law.
By reference to our opinion in Olan Mills, Incorporated v. City of Tallahassee, Fla. 1958, 100 So.2d 164, appellants suggest that we there took jurisdiction of an appeal involving a similar proposition. In the cited case we were not confronted by a jurisdictional problem. The notice of appeal there involved was filed October 5, 1956. The appeal was pending in this court on July 1, 1957, when Amended Article V, supra, took effect. We retained jurisdiction in accord with the provisions of Article V, Section 26(6), Florida Constitution, which specifically authorized us so to do. We tender this explanation in order to avoid any apparent conflict between our position in the instant case and our position in the last cited case.
*411 The case has been exceedingly well briefed and exceptionally well argued by counsel for all parties. In view of the importance of the question to the litigants, the interest of the public in the community involved, and the fact that this case has already awaited its turn on our own oral argument docket, it is suggested that when the record reaches the court of appeal any further hearing be expedited consistent with the other business of that court.
In accord with Rule 2.1, subd. a(5) (d) Florida Appellate Rules, 31 F.S.A., the notice of appeal and all other papers filed herein shall at the expiration of five days from the filing of this opinion be transferred to the District Court of Appeal of Florida, Second District.
It is so ordered.
TERRELL, C.J., and ROBERTS, DREW and O'CONNELL, JJ., concur.