This appeal arises from a suit filed by the City of Hartselle, Alabama (Hartselle) against Alabama Farm Bureau Mutual Casualty Insurance Company, Inc. (Farm Bureau), in which Hartselle sought to collect *Page 1221 
an amount of money representing a municipal license tax allegedly owed the plaintiff by Farm Bureau for the years 1972 through 1983. Farm Bureau appeals from a judgment in favor of Hartselle which ordered the insurance company to pay $19,839.97 in tax, interest, and penalties.
The case arose out of the following facts:
Hartselle is, and was during the years in question, a municipal corporation existing in the State of Alabama. Pursuant to state law and its own ordinance, Hartselle imposed a license tax on insurance companies for the privilege of doing business within the city limits.
Farm Bureau is an insurance company having its home office in Montgomery, Alabama, but it sells insurance policies to citizens of Hartselle and insures property located in Hartselle. There is no dispute that during the years in question Farm Bureau did business in Hartselle so as to fall within the ambit of the license tax ordinance.
What is in dispute, however, is the method by which the amount of license tax is determined. Both the Hartselle ordinance and the state statute authorizing municipal license taxes require that the tax be based on the premiums the insurance company received on policies issued during the preceding year. During each of the years in question, Farm Bureau reported to Hartselle, and paid tax on, the total amount of premiums on new policies actually issued during the preceding year. These totals did not include premiums on policies which were simply renewed during the preceding year.
Hartselle filed suit against Farm Bureau on December 30, 1976, alleging that the insurance company had failed to comply with the city license ordinance by inaccurately reporting premiums received and incorrectly computing the license tax payable to the city. Hartselle claimed that the tax should have been based on premiums received not only from new policies issued during the preceding year, but also from existing policies which were renewed during the preceding year.
Farm Bureau argued in defense that it had correctly computed the taxes due because existing policies, which were simply continued in force by payment of renewal premiums, were not policies "issued in the preceding year" within the meaning of both the Hartselle ordinance and the applicable state statutes. Further, Farm Bureau claimed that Hartselle did not require life insurance companies to include such renewal premiums in the total receipts for tax purposes, but, nevertheless, this requirement was imposed on Farm Bureau. This double standard, the defendant argued, was a denial of equal protection of the laws and, therefore, unconstitutional.
On August 27, 1982, the trial court denied Farm Bureau's motion for summary judgment and granted a motion for summary judgment in favor of Hartselle. With liability having been determined against Farm Bureau and without waiving the right to appeal, the parties stipulated that Farm Bureau owed $19,839.97 in tax, interest, and penalties, and that of this amount, $18,498.34 was attributable to the inclusion of renewal premiums in the tax computation. The trial court entered final judgment against Farm Bureau on August 29, 1983, and defendant herein appeals.
Farm Bureau asserts on appeal that the trial judge erred as a matter of law in granting summary judgment in favor of Hartselle and allowing the city to tax renewal premiums. Additionally, Farm Bureau claims that the trial judge erred in granting summary judgment in favor of Hartselle on the issue of unequal and unconstitutional application of the license tax ordinance.
The issues to be decided in this case are 1) whether Farm Bureau's renewal of an existing policy constitutes "issuing" the policy, thus subjecting the renewal premiums to the municipal license tax, and 2) whether Hartselle has administered its municipal license tax ordinance in such an unequal manner as to constitute a violation of the equal protection guaranty of the *Page 1222 
fourteenth amendment to the United States Constitution.
 I.
Municipalities have no inherent power of taxation. The state, however, having the power to tax, may delegate this power to a municipality. Town of Hackleburg v. Northwest Alabama GasDistrict, 277 Ala. 355, 170 So.2d 792 (1964). The authority of municipalities in Alabama to place a license tax on businesses and professions is found in Code 1975, § 11-51-90. This section reads in part as follows:
 (a) All municipalities shall have the power: (1) To license any exhibition, trade, business, vocation, occupation or profession not prohibited by the Constitution or laws of the state which may be engaged in or carried on in the city or town.
Code 1975, § 11-51-90.
In addition to this general grant of licensing power to municipalities, the legislature has enacted specific provisions regulating municipal taxation of insurance companies. This case turns on the interpretation given to language used in both of these state provisions and in the provision in Hartselle's ordinance authorizing the licensing of insurance companies.
Code 1975, § 11-51-120, establishes the maximum amount of tax which a municipality may put on an insurance company which issues fire or marine insurance. The statute reads in relevant part as follows:
 No license or privilege tax or other charge for the privilege of doing business shall be imposed by any municipal corporation upon any fire or marine insurance company doing business in such municipality except upon a percentage of each $100.00 of gross premiums, less return premiums, on policies issued during the preceding year on property located in such municipality. [Emphasis added.]
Code 1975, § 11-51-120.
Similar language is used in the succeeding provision, which sets the maximum amount of tax which a municipality may place on an insurance company which issues insurance other than fire or marine insurance. This section reads in part as follows:
 (a) No license or privilege tax or other charge for the privilege of doing business shall be imposed by any municipal corporation upon any insurance company, other than fire and marine insurance companies, doing business therein or its agents which shall exceed for the company and its agents the following amounts:
 (1) Each insurance company, in cities and towns having a population of 5,000 or less, $10.00 and $1.00 on each $100.00 and major fraction thereof of the gross premiums, less return premiums, received during the preceding year on policies issued during said year to citizens of said cities and towns. [Emphasis added.]
Code 1975, § 11-51-121.
While these provisions distinguish, for purposes of the actual amount of tax imposed, between insurance companies marketing fire and marine insurance on the one hand, and those marketing other types of insurance on the other hand, both provisions require a determination of the gross premiums received by the insurance company on policies which were issued during the preceding year.
Under the authority granted by these statutes, Hartselle enacted a similar ordinance imposing the maximum allowable license tax on insurance companies. Hartselle's ordinance uses substantially the same language as its state counterparts, stating in pertinent part as follows:
 Each person engaged in the insurance business, except fire and marine, and fraternal benefit organizations, shall pay as a license tax $10.00 and also $1.00 on each $100.00 or major fraction thereof, of the gross premiums less the return premiums, received during the preceding year, on policies issued during such year, to citizens of this city. . . . Each person engaged in the business of fire or marine insurance shall pay four percent *Page 1223 
(4%) of the gross premiums, less the return premiums on policies issued during the preceding year on property located in the city. [Emphasis added.]
§ 9-1-118, Hartselle Municipal License Code (1970).
Therefore, in order to pay the required license tax in Hartselle, an insurance company must first determine its gross premiums less return premiums on policies which were issued during the preceding year to citizens of Hartselle or on property located in Hartselle, depending on the type of insurance marketed. The company then computes the tax due on those gross premiums, the amount again depending on the type of insurance involved.
The issue arising in this case involves the interpretation of the word "issued" as used in the Alabama statutes and the Hartselle ordinance. Is a policy of insurance "issued" within the meaning of the state statutes and Hartselle's ordinance when a policy is renewed by payment of a renewal premium? If such a renewal does not constitute the issuance of a policy of insurance, then those renewal premiums must not be included in the amount of gross premiums upon which the municipal license is based, and, if that is the case, the trial court incorrectly granted Hartselle's motion for summary judgment.
 II.
Although Farm Bureau was taxed pursuant to Hartselle's ordinance, that ordinance is authorized by and uses the same language as the state statutes pertaining to the licensing of insurance companies. Thus, the resolution of this case requires the court to determine whether the state legislature intended the renewal of insurance policies to be equated with theissuance of insurance policies, so as to subject renewal premiums to the municipal license tax. In making this determination, we must ascertain and effectuate legislative intent as expressed in the statute. League of Women Voters v.Renfro, 292 Ala. 128, 290 So.2d 167 (1974).
Furthermore, the intention of the legislature must primarily be determined from the language of the statute itself if it is unambiguous, and clearly expressed intent must be given effect without room for interpretation. Kimbrell v. State, 272 Ala. 419, 132 So.2d 132 (1961). Words used in the statute must be given their natural, plain, ordinary, and commonly understood meaning. McKnett v. St. Louis S.F.Ry. Co., 227 Ala. 349,149 So. 822 (1933).
In addition to these general rules of construction, it is established that taxing statutes should be strictly construed against the taxing power. State v. Seals Piano Co., 209 Ala. 93,95 So. 451 (1923). Where the language of a taxing statute is reasonably capable of two constructions, the interpretation most favorable to the taxpayer must be adopted. Williams v.Pugh, 24 Ala. App. 57, 129 So. 792 (1930).
Hartselle seeks to escape the harshness of these rules of construction by asserting that the statutes at issue, §11-51-120 and § 11-51-121 of the Code of Alabama, are provisions which grant exemption from taxation, rather than provisions which impose a tax. This approach is favorable to the city, because exemptions are construed against the taxpayer. In Anniston City Land Co. v. State, 160 Ala. 253,48 So. 659 (1909), this court discussed the rule of construction applicable to exemption provisions as follows:
 The "universal rule of construction is that exemptions from taxation, whether statutory or constitutional, are to be strictly construed, against the exemption and in favor of the right to tax, and that no person or property is to be exempted unless the intention to exempt such person or property clearly appears in some statute or constitutional provision."
160 Ala. at 254, 48 So. at 660. Thus, if the statutes at issue herein are exemptions, their language will be construed in favor of Hartselle.
Hartselle's contention that § 11-51-120 and § 11-51-121 are exemption statutes is predicated on the legislative history of *Page 1224 
those statutes. As mentioned earlier, the legislature gave municipalities broad licensing powers in what is now Code 1975, § 11-51-90. The original provision was enacted as § 1339, Code of Alabama (1907). The legislature thereafter limited that broad power by imposing restrictions on the amount of license tax which could be placed on insurance companies. These restrictions are now found in the statutes at issue, §11-51-120 and § 11-51-121.
Hartselle asserts that by narrowing the scope of what was originally a very broad municipal tax power, the legislature in effect "exempted" the insurance companies from the city's general power of licensing. We reject this analysis. The legislature, having authorized the licensing of businesses, merely imposed a maximum rate of tax which could be applied to insurance companies, and provided the means by which that tax would be measured.
Farm Bureau suggests that if § 11-51-120 and § 11-51-121 were regarded as exemption laws, as Hartselle contends they should be, then all statutes which set maximum tax rates would be considered exemption statutes. We agree with that conclusion. Therefore, we find that § 11-51-120 and § 11-51-121, Code of Alabama (1975), do not grant exemptions from licensing. If the language of these statutes is reasonably capable of two constructions, the interpretation most favorable to Farm Bureau must be adopted. Williams v. Pugh, supra.
As stated above, the rules of statutory construction require that words used in a statute be given their plain, natural, ordinary, and commonly understood meaning. McKnett v. St. Louis S.F.Ry. Co., supra. This court must determine what the legislature intended when it used the phrase "policies issued during the preceding year" by determining the ordinary and commonly understood meaning of the words.
Farm Bureau and Hartselle offer their own interpretations of what an insurance policy is and how an insurance policy is issued. Farm Bureau's general assertion is that the receipt of a renewal premium does not have the effect of issuing a policy, but it merely continues in force a policy which has been issued previously. Hartselle counters this argument with a "substance over form" analysis. It contends that regardless of the fact that Farm Bureau calls the process a policy renewal, the original policy actually expires and a new policy comes into effect with new terms and a new consideration. Each party suggests that its approach represents the legislature's intention.
Farm Bureau correctly states that an insurance policy is a formal written contract containing all of the agreements pertaining to the insurance. This court held to that effect inPrudential Casualty Company v. Kerr, 202 Ala. 259, 80 So. 97
(1919). Similarly, the word "policy" is defined in the Code of Alabama as follows:
 (1) POLICY. A written contract of, or written agreement for, or effecting, insurance, by whatever name called, and includes all clauses, riders, endorsements and papers attached, or issued, and delivered for attachment thereto and made a part thereof.
Code 1975, § 27-14-1. Farm Bureau states that the original policy issued to its insured is the only policy ever issued and that it represents the written contract of insurance between the parties. The policy by its terms provides for its continuation in force by payment of the renewal premium. Nothing is added to the policy because of the renewal process.
By taxing the premiums on insurance policies "issued during the preceding year," the legislature seeks to allow a tax on the premiums paid on these policies during the first year they are in effect. Farm Bureau asserts that its policies are first put into effect when the written policy is issued, and that subsequent renewals do not alter that written policy. Therefore, it says, the premiums paid on the policy during the year it is issued are taxable, but the renewal premiums paid subsequent to that year are not taxable. *Page 1225 
Hartselle bases its argument on the fact that an insurance policy is a contract for insurance. Under this contract analysis, a policy is issued when "it is delivered and accepted in such manner that it becomes a binding and effective contract between the parties." 1 Couch on Insurance 2d, § 10:2 (rev. ed. 1984). Hartselle asserts that Farm Bureau policies are no longer binding contracts when the term of the policy has expired; that a new contract is entered into at the time of payment of the renewal premium by the insured and acceptance of such payment by Farm Bureau; that neither the insurance company nor the insured is bound by the terms of the original policy to renew the insurance; and that such a renewal is a separate contract freely entered into by the parties.
Using Hartselle's approach, the phrase "policies issued during the preceding year" would refer to contracts for insurance which become binding during the preceding year. Hartselle asserts that since Farm Bureau's policies become binding contracts when the renewal premium is paid by the insured, the legislature intended these renewal premiums to be taxable along with the premiums on policies issued for the first time.
Farm Bureau and Hartselle each provides a rational construction of the language the legislature used. The statutes are clearly capable of either interpretation. In such a case, a construction of the language in favor of the taxpayer leads to the conclusion that the legislature did not intend policy renewals to be taxable.
There are no Alabama cases which have construed the language in issue. The United States Supreme Court, however, has dealt with a related issue in Provident Savings Life AssuranceSociety v. Kentucky, 239 U.S. 103, 36 S.Ct. 34, 60 L.Ed. 167
(1915). In that case, an insurance company withdrew its agents and offices from the State of Kentucky and no longer offered insurance policies to the citizens of that state. The company, however, continued to receive renewal premiums from Kentucky residents, maintaining in force policies which had been previously issued. The state sued to recover license taxes on those renewal premiums. The Court held that the receipt of renewal premiums alone was insufficient to constitute doing business within the State of Kentucky so as to subject the insurance company to a state license tax.
Admittedly, Provident Savings decided whether the insurance company was doing business in the state, an issue not in dispute presently. Here, we are concerned with the measure of the tax involved, not its basis. Nevertheless, ProvidentSavings provides an important insight. If the renewal of an existing policy cannot be the basis of doing business within a state for license tax purposes, can the renewal of an existing policy be the subject of that license tax? Arguably, the answer is no.
In construing § 11-51-120 and § 11-51-121, it is necessary to examine the entire taxing scheme applicable to insurance companies. The court must look at the entire statutory scheme instead of isolated phrases or clauses. Opinion of theJustices, 264 Ala. 176, 85 So.2d 391 (1956). Two important parts of this taxing scheme are § 27-4-4 and § 27-4-5, Code of Alabama (1975). These provisions require insurance companies to pay to the state an annual tax based on "premiums and annuity considerations received by such insurer for business done in this state during the preceding calendar year." Code 1975, §27-4-5 (a). The state does not base its tax on premiums from policies issued during the preceding year, but on all premiums received. Therefore, this statute would include renewal premiums in the computation of the tax.
The difference in the language used in § 27-4-5, in comparison with § 11-51-120 and § 11-51-121, demonstrates the intent of the legislature to differentiate between the tax which an insurance company pays to the state for revenue purposes, and the tax which the insurance company pays to a municipality for the privilege of doing business. The state tax is based on all premiums received during the year. The municipal *Page 1226 
license is based on business done within that city during the year, that is, policies issued on property located in that municipality during the year and policies issued to citizens of that municipality during the year. When a policy is issued on such property or to such a person, the first year's premiums are taxed for the privilege of doing business within the municipality. The subsequent renewal of that policy does not cause the insurance company to engage in any further business within the municipality, so the policy should not be taxed again.
A different result is reached, however, if a policy is renewed with additional provisions or endorsements. Where payment of a renewal premium causes additional property within the municipality to be insured, then that renewal premium is subject to the tax. Similarly, where a policy renewal causes an additional person within the municipality to be insured, then that renewal premium is subject to the license. In other words, a policy which is amended to add additional property or persons within its coverage at the time it is renewed becomes in the next year a policy "issued during the preceding year" within the meaning of the statutes. The premiums received from such a policy would be subject to the license tax.
We, therefore, hold that a renewal premium which simply continues in effect an existing policy of insurance with no change in coverage is not subject to Hartselle's municipal license tax. Where a policy is renewed, however, and additional property or persons are insured, then the renewal premium received from such a policy is subject to this tax.
 III.
Farm Bureau asserts that if Hartselle is allowed to place a license tax on renewal premiums, then Farm Bureau will be denied equal protection of the law, because Hartselle does not require life insurance companies to pay the tax on such premiums. This court, having ruled that renewal premiums are generally not subject to the municipal license tax, has rendered Farm Bureau's argument somewhat academic. Since some policy renewals will constitute new coverage, however, and, therefore, subject the premium received to the municipal tax, we must address the issue.
Hartselle's ordinance and § 11-51-120 and § 11-51-121 of the Code of Alabama (1975) require all insurance companies to be taxed on the premiums received from "policies issued during the preceding year." Hartselle must apply this law as we have herein construed it in equal manner to all insurance companies doing business in that municipality. City of Birmingham v.Stegall Company, Inc., 439 So.2d 91 (Ala. 1983). Hartselle cannot exempt life insurance companies from the taxation of renewal premiums because of the city's understanding that all life insurance policies are without exception entire, binding contracts. The test we have herein adopted is to be applied to life insurance companies and all other insurance companies. If a renewal premium payment brings about additional coverage as to property or persons insured, then that renewal premium is subject to the municipal license tax.
For all of the above reasons, the judgment of the trial court is reversed and the cause remanded for a determination consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur. *Page 1227