HOLMES, Judge.
This is a case involving the application and interpretation of certain provisions of the Alabama Banking Code, Chapters 1A through 12A of Title 5 of the 1975 Alabama Code (1981 Repl. Vol.).
This suit is the result of proceedings initiated by the superintendent of the State Banking Department (SBD) to take possession of the First State Bank of Atmore (bank) under the authority of Ala.Code (1975), § 5-8A-20. The bank filed suit pursuant to Ala.Code (1975), § 5-8A-27, to enjoin those proceedings, naming as defendants the superintendent, the Federal Deposit Insurance Corporation (FDIC), and the First National Bank of Atmore, which, as the highest bidder, assumed the bank’s deposit liabilities and certain of its assets.
Following ore terms proceedings, the trial court denied the relief sought by the bank and entered a judgment for the defendants.
The bank appeals. We affirm.
Viewing the record with the attendant presumptions, we find that the following is revealed. The bank, which commenced business on February 22, 1984, has had a troubled existence during the few years that it has been in business. When the SBD first examined the bank in June 1985, it was apparently already operating under certain unsatisfactory conditions. A joint examination by the SBD and the FDIC approximately six months later indicated that the unsatisfactory conditions had worsened. During that six-month period the bank’s capital had decreased sharply.
In May 1986 the bank entered into a “stipulation and consent” agreement with the FDIC, whereby it consented to the FDIC’s issuance of a cease and desist order (C & D) against it without first receiving a notice of the charges against it and a hearing on those charges. The superintendent approved the stipulation and consent and agreed that the C & D issued by the FDIC *27 would be binding upon him and the bank to the same extent as a C & D issued under Ala.Code (1975), § 5-2A-12. Thereafter, on July 9, 1986, the FDIC issued the C & D, wherein it made many specific requirements of the bank aimed at improving or correcting the bank’s financial condition.
In January 1987, approximately six months after the issuance of the C & D, the SBD and the FDIC again conducted a joint examination of the bank. They discovered that the bank still had a deficit capital situation and that it was, therefore, illegally making loans.
One month later the State Banking Board, based upon the superintendent’s recommendation and following a meeting in which the bank’s directors had the opportunity to be heard, directed the superintendent to take possession of the bank, and he initiated proceedings to do so. This suit followed.
I
On appeal the bank contends that the superintendent had no right to take possession of the bank because he was bound by the terms, including the enforcement provisions, of the C & D. The bank further contends that, because it relied in good faith on the rehabilitation plan set forth in the C & D, it should be protected from enforcement action by the superintendent which is contrary to the terms of the C & D.
The bank apparently believes and takes the position that the C & D issued by the FDIC and joined in by the superintendent was a bargained-for agreement which was mutually binding upon the bank and the superintendent. We find the bank’s position to be without merit.
The only possible agreement entered into by the superintendent and the bank was the stipulation and consent. Under the terms thereof the superintendent agreed that the C & D issued by the FDIC would be binding upon him and the bank as if he had issued a separate C & D under Ala. Code (1975), § 5-2A-12. There is nothing in the stipulation and consent, however, which in any way makes the terms and provisions of the C & D itself a mutually binding obligation or contract.
Moreover, there is nothing within the provisions of the C & D which indicates that that document was intended in any way to be an agreement between the bank and the FDIC or the superintendent. Indeed, the C & D does not require either the superintendent or the FDIC to do anything vis-a-vis the bank. Rather, it sets forth sixteen pages of specific requirements of the bank.
The bank, however, apparently also contends that the superintendent is bound by the enforcement provisions of Ala.Code (1975), § 5-2A-12, because he agreed in the stipulation and consent that the C & D would be binding as an order issued pursuant to that statute.
Section 5-2A-12 authorizes the superintendent to order the board of directors of any bank to correct any matters in the conduct of the affairs of the bank which are, in his opinion, unsafe and unsound. The statute provides that the State Banking Board may remove any bank director or officer who does not comply with the superintendent’s order if it determines, for example, that the bank has suffered a substantial financial loss or that personal dishonesty on the part of such director or officer is involved.
The bank contends that the superintendent, having in effect issued a C & D under § 5-2A-12, is now limited to the sole enforcement mechanism contained in the statute — the removal of the bank’s officers and directors.
The bank’s contention basically presents a question of statutory interpretation. The cardinal rule governing the construction of a statute is to ascertain the legislative intent, and that intent is determined by examining the language of the legislation as a whole in light of its general purpose. Gulf Coast Media, Inc. v. Mobile Press Register, Inc., 470 So.2d 1211 (Ala.1985); Mitchell v. State Child Abuse & Neglect Prevention Board, 512 So.2d 778 (Ala.Civ.App.1987). The words used in the statute should be given their natural, plain, ordi *28 nary, and commonly understood meaning. See Alabama Farm Bureau Mutual Casualty Insurance Co. v. City of Hartselle, 460 So.2d 1219 (Ala.1984); Mitchell, 512 So.2d 778.
Applying these rules to the construction of § 5-2A-12, we can conclude not only that the statute does not make a C & D issued thereunder a mutually binding obligation as between a bank and the superintendent, but also that the statute does not limit the superintendent’s enforcement options to the removal of bank directors or officers once he has issued a C & D.
The determination of whether the superintendent had the right to take possession of the bank, however, requires more than simply an interpretation of § 5-2A-12 standing alone. Rather, the entire statutory scheme relative to unsound or unsafe banks and the powers of the superintendent with regard thereto must be examined. See City of Hartselle, 460 So.2d 1219; Mitchell, 512 So.2d 778.
Ala.Code (1975), § 5-8A-20, is the statute which authorizes the superintendent to take possession of the property and business of a bank based upon several grounds, including the superintendent’s determination that the bank is in an unsound and unsafe condition. There is nothing contained in the plain language of § 5-8A-20 which in any way limits the superintendent’s power to invoke that statute where he has previously placed a bank under a C & D pursuant to § 5-2A-12. In fact, the language of § 5-8A-20 clearly indicates that the superintendent may seek to take possession of a bank after he has placed it under a C & D and such bank “shall neglect or refuse to observe [such] order of the superintendent directing or requiring the doing or cessation of any particular thing required to be done or not done by law.”
We find it highly appropriate, however, to construe §§ 5-2A-12 and 5-8A-20 together. Because the two statutes address the same subject—actions the superintendent may take with regard to banks which are in an unsound and unsafe condition—they are in pari materia and should be construed together to ascertain the meaning and intent of each. McDonald’s Corp. v. DeVenney, 415 So.2d 1075 (Ala.1982). “Where possible, [such] statutes should be resolved in favor of each other to form one harmonious plan and give uniformity to the law.” League of Women Voters v. Renfro, 292 Ala. 128, 131, 290 So.2d 167, 169 (1974).
In construing §§ 5-2A-12 and 5-8A-20 with reference to each other, we conclude that the legislature clearly intended to give the superintendent the authority to take possession of a bank based upon any of the grounds enumerated in § 5-8A-20, regardless of whether or not he had earlier attempted to correct the unsafe or unsound condition of the bank by placing it under a C & D pursuant to § 5-2A-12.
Section 5-2A-12 simply gives to the superintendent a milder alternative or option than taking possession of a bank which is in an unsafe and unsound condition. Under the statute the superintendent may first issue a C & D and then, if necessary, for example, due to refusal to comply with the order, seek the removal of the bank’s directors or officers.
It is interesting to note that the comment to § 5-2A-12 supports our interpretation of these statutes. The comment indicates that the enforcement provision of § 5-2A-12 was added simply to provide the superintendent with an alternative “to the more drastic procedure of taking possession of the bank.” Clearly, § 5-2A-12’s enforcement provision was not intended to hinder the superintendent’s use of the more drastic procedure when he deems it necessary.
We would finally note that our interpretation of these statutes appears to be the only logical one. If we were to accept the bank’s interpretation, we would have to conclude that no matter how much the financial condition of a bank deteriorates after the superintendent has placed it under a C & D pursuant to § 5-2A-12, the superintendent’s only means to correct the unsound and unsafe condition of the bank *29 and to protect the public would be to seek the removal of the bank’s officers and directors. Such an interpretation would, in our opinion, not only be contrary to legislative intent, but also to common sense.
II
The bank also contends that the superintendent’s allegations, set forth in his recommendation to the State Banking Board that he take possession of the bank, are not supported by the evidence. The issue before this court raised by the bank’s contention is whether the evidence supports the trial court’s judgment in favor of the superintendent.
In addressing this issue, we are mindful of the fact that the evidence in this case was presented ore tenus to the trial court sitting without a jury. The trial court’s judgment is, therefore, presumed to be correct and will not be set aside on appeal unless it is so unsupported by the evidence that it is plainly and palpably wrong. In re Morris, 494 So.2d 87 (Ala.Civ.App.1986); Insurance Co. of North America v. Chandler, 487 So.2d 937 (Ala.Civ.App.1986).
Our review of the record reveals that there is clearly evidence which supports the judgment of the trial court. In particular, we note the evidence that the January 20, 1987, examination of the bank, approximately six months after the issuance of the C & D which ordered the bank to correct its capital position, indicated that the bank still had a deficit capital position of $228,-000 and that it was thus making loans in violation of Ala.Code (1975), § 5-5A-22.
This evidence alone, in our opinion, supports the trial court’s judgment that the bank was not entitled to enjoin the proceedings initiated by the superintendent under Ala.Code (1975), § 5-8A-20, to take possession of the bank. However, the impact of this evidence was bolstered by other evidence which showed that the bank had continued to show negative earnings each year, that it was expected to suffer further losses in the future, and that its blanket bond had been canceled and no new coverage obtained.
In view of the above, we cannot say that the trial court’s judgment is plainly and palpably wrong.
This case is due to be affirmed.
AFFIRMED.
INGRAM, J., concurs.
BRADLEY, P.J., recuses himself.