In November 1994, the City of Millbrook notified Tri-Community Water System ("Tri-Com") that the City claimed a business license tax on Tri-Com's gross receipts, pursuant to the Code of Millbrook, § 84-10-20. Tri-Com filed a declaratory judgment action in response, requesting that the trial court hold that the City could not impose the business license tax on Tri-Com and requesting that the court permanently enjoin the City from attempting to collect the tax. After the City filed an answer and the trial court held a hearing on the matter, the trial court granted the declaratory judgment and injunctive relief requested by Tri-Com, holding that the City could not tax Tri-Com under § 84-10-20. The City appealed to the supreme court, which transferred this case to this court pursuant to Ala. Code 1975, § 12-2-7(6). We affirm.
At the hearing before the trial court, the parties stipulated to all factual allegations contained in the complaint and the answer. The judgment of the trial court is based on an interpretation of law, specifically, an interpretation of the Millbrook ordinance; therefore, our review is de novo.See *Page 867 Lepeska Leasing Corp. v. State Dep't of Revenue, 395 So.2d 82
(Ala.Civ.App. 1980), cert. denied, 395 So.2d 85 (Ala. 1981).
As when interpreting statutes enacted by the state legislature, in interpreting a municipal ordinance we must "ascertain and effectuate [the legislative body's] intent as expressed in the [ordinance]." Alabama Farm Bureau MutualCasualty Insurance Co. v. City of Hartselle, 460 So.2d 1219,1223 (Ala. 1984). To ascertain that intent, we must first focus our attention on the language of the ordinance, and we must give effect to the intent clearly expressed therein if the language is unambiguous. Hartselle, 460 So.2d at 1223. The language in the ordinance must be given its "natural, plain, ordinary, and commonly understood meaning." Id. (citation omitted). In the case of taxing ordinances, however, the ordinance must "be strictly construed against the taxing power"; and, "[w]here the language of a taxing [ordinance] is reasonably capable of two constructions, the interpretation most favorable to the taxpayer must be adopted." Id. (citations omitted).
The City argues that the trial court erred when it held that Tri-Com is not taxable under the City's business license tax ordinance, § 84-10-20. The City points out that it is authorized by Ala. Code 1975, § 11-51-90, to levy license taxes. Pursuant to this authority, the City enacted § 84-10-20, which states:
 "Electric light companies, power companies, gas companies, pipeline companies for transporting gas, oil, gasoline or other commodities, gas distributing companies whether by means of pipe line, drums, cylinders, or otherwise, heating companies or other public utilities, incorporated under the laws of this state or any other state, or whether incorporated at all, shall pay 3% of the gross receipts of the business. . . ."
Tri-Com argues that it is not a "public utility" and is therefore not subject to § 84-10-20. We must strictly construe § 84-10-20 in our attempt to ascertain the intention of the body that enacted it. See Hartselle, 460 So.2d at 1223. The plain language of the ordinance indicates that it applies to a "public utility"; however, that term is not defined in the Code of Millbrook. In addition, that term is not one with a simple, commonly understood meaning. The term "public utility" has a specific meaning with specific consequences. Therefore, we look to state statutes and caselaw to interpret "public utility."
The City directs our attention to the term as defined in the statute creating the Alabama Utility Gross Receipts Tax, Ala. Code 1975, § 40-21-80(a)(8), which it argues is similar to the tax it is attempting to levy. Interestingly, the term "public utility" is not defined in that statute. The definition provided by the statute is "[u]tility: [e]very person regularly engaged in furnishing utility services to another person in the State of Alabama." § 40-21-80(a)(8). Tri-Com argues that the true definition of "public utility" is found in Ala. Code 1975, § 37-4-1(7)(c). Again, we note that the statute itself does not define "public utility." The definition contained in that section is
 "(7) Utility. Such term shall mean and include every person, not engaged solely in interstate business, that now or may hereafter own, operate, lease or control:
". . . .
 "c: Any plant, property, or facility for the supply, storage, distribution, or furnishing to or for the public of water for manufacturing, municipal, domestic or other uses."
§ 37-4-1(7)(c). However, the annotations to § 37-4-1 contain caselaw defining "public utility." See, e.g., Coastal StatesGas Transmission Co. v. Alabama Public Service Commission,524 So.2d 357 (Ala. 1988). We agree with Tri-Com that the definition of the term "public utility" is found in the cases construing §37-4-1(7).
In Coastal, the Alabama Supreme Court was faced with the question of whether a company that owned and operated gas pipelines through which it sold natural gas to select customers was a public utility for the purposes of regulation by the Public Service Commission (the "PSC"). Coastal, 524 So.2d at 358. The court construed the phrase "to or for the public," contained in the definition *Page 868 
of utility in § 37-4-1(7)(b).[1] Id. Relying on authority from other jurisdictions and definitions from legal encyclopedias and dictionaries, the court concluded that the gas company was not a public utility because it did not serve the public, but served only those entities with which it contracted. Id. at 365.
According to the court, a public utility is " 'a private business organization, subject to governmental regulation, that provides an essential commodity or service, as water, electricity, or communication, to the public.' " Id. at 360 (quoting Webster's Dictionary (New Riverside ed. 1984)). The court also relied upon the definition of "public utility" provided in Black's Law Dictionary:
 " 'A privately owned and operated business whose services are so essential to the general public as to justify the grant of special franchises for the use of public property or of the right of eminent domain, in consideration of which the owners must serve all persons who apply, without discrimination. It is always a virtual monopoly.
 " 'A business or service which is engaged in regularly supplying the public with some commodity or service which is of public consequence and need, such as electricity, gas, water, transportation, or telephone or telegraph service. Gulf States Utilities Co. v. State, Tex.Civ.App., 46 S.W.2d 1018, 1021. Any agency, instrumentality, business, industry or service which is used or conducted in such manner as to affect the community at large, that is, which is not limited or restricted to any particular class of the community. The test for determining if a concern is a public utility is whether it has held itself out as ready, able and willing to serve the public. The term implies a public use of an article, product, or service, carrying with it the duty of the producer or manufacturer, or one attempting to furnish the service, to serve the public and treat all persons alike, without discrimination. It is synonymous with "public use," and refers to persons or corporations charged with the duty to supply the public with the use of property or facilities owned or furnished by them. Buder v. First Nat. Bank in St. Louis, C.C.A.Mo., 16 F.2d 990, 992. To constitute a true "public utility," the devotion to public use must be of such character that the public generally, or that part of it which has been served and which has accepted the service, has the legal right to demand that the service shall be conducted, so long as it is continued, with reasonable efficiency under reasonable charges. The devotion to public use must be of such character that the product and service is available to the public generally and indiscriminately, or there must be the acceptance by the utility of public franchises or calling to its aid the police power of the state.' "
Coastal, 524 So.2d at 360-61 (quoting Black's Law Dictionary at 1104 (5th ed. 1979)).
Among the many authorities from other jurisdictions cited with approval by the court in Coastal is Lockwood Water UsersAssociation v. Anderson, 168 Mont. 303, 542 P.2d 1217 (1975), which is in some ways similar to this case. Although the dispute in Lockwood concerned whether a member of the Association had breached his contract with the Association when he placed additional trailers on his property in excess of the number for which the Association had agreed to provide water,Lockwood, 168 Mont. at 306-07, 542 P.2d at 1218-19, the Association provided service in much the same way as Tri-Com and was similarly organized. See Lockwood, 168 Mont. at 305,542 P.2d at 1218. The Supreme Court of Montana determined that the Association was not a public utility because it provided service only to members who shared the costs of operation.Lockwood, 168 Mont. at 310, 542 P.2d at 1221. The court outlined the generally accepted tests for the determination of whether a corporation is a public utility. Lockwood,168 Mont. at 308-09, 542 P.2d at 1220.
 " 'The test is, therefore, whether or not such person holds himself out, expressly or impliedly, as engaged in the business of supplying his product or service to the public, as a class, or to any limited portion *Page 869 
of it, as contradistinguished from holding himself out as serving or ready to serve only particular individuals. . . . It has been stated that the true criterion by which to determine whether a plant or system is a public utility is whether or not the public may enjoy it of right or by permission only. . . .
 " 'Accordingly, a utility must act toward all members of the public impartially and treat all members alike; and it cannot arbitrarily select the persons for whom it will perform its service or furnish its commodity, or refuse to one a favor or privilege which it has extended to another, since the term "public utility" precludes the idea of service which is private in nature and is not to be obtained by the public. . . .' "
Lockwood, 168 Mont. at 308-09, 542 P.2d at 1220 (quoting 73 C.J.S. Public Utilities § 2, p. 992 and § 7b, p. 1000). In addition, the court noted that " '[i]f [a corporation] confines its service to its own stockholders or to members of its own group, and does not serve or hold itself out as willing to serve the public, it is not ordinarily considered a public utility.' " Lockwood, 168 Mont. at 309, 542 P.2d at 1220
(quoting 64 Am.Jur.2d, Public Utilities, § 5, p. 553).
Under the authority of Coastal and Lockwood, Tri-Com cannot be a "public utility." The charter of the organization indicates that the purpose of Tri-Com is "[t]o associate its members together for their mutual benefit through cooperation, but not for pecuniary profit, . . . and to that end to construct, maintain and operate a water system for thesupplying of water . . . to its members. . . ." The purpose of the corporation is not to supply water to the public, but instead to supply water to the members of the corporation. Tri-Com " 'confines its service to its own stockholders or to members of its own group, and does not serve or hold itself out as willing to serve the public.' " Lockwood, 168 Mont. at 309,542 P.2d at 1220 (citation omitted); see also Coastal, 524 So.2d at 360-61 (quoting Black's Law Dictionary at 1104 (5th ed. 1979)) (stating that one test for determining whether a corporation is a public utility is "whether it has held itself out as ready, able and willing to serve the public").
The City argues that Coastal cannot be considered controlling in this case because it involves an interpretation of the term "public utility" not for the purposes of a tax statute, but instead for purposes of regulation by the PSC. We find the distinction to be meaningless in this case. The term "public utility" has been interpreted by the Alabama Supreme Court to include only those companies providing utilities to the public at large. See Coastal, 524 So.2d at 360-65. The City of Millbrook chose to use the term "public utilities" to limit those businesses that were subject to its taxing power under its license tax ordinance, and it cannot now attempt to read the ordinance to allow taxing of any "utility."
Both parties raise other issues on appeal; however, we pretermit discussion of those other issues because the determination that Millbrook Code § 84-10-20 does not apply to Tri-Com because it is not a "public utility" is dispositive of this appeal.
AFFIRMED.
YATES, MONROE, and THOMPSON, JJ., concur.
ROBERTSON, P.J., concurs in the result.
[1] Section 37-4-1-(7)(b) is similar to § 37-4-1-(7)(c) except that it pertains to the "manufacture, storage, distribution, sale or furnishing to or for the public of natural or manufactured gas. . . ."