CRAWLEY, Judge.
Brandi Horton, a high school student, was riding in a school bus driven by William C. Christian. The bus collided with another school bus, driven by Charlotte B. Briley, and an automobile driven by Billie C. King. Horton was permanently injured in that collision. Through her mother Shelby Horton, she sued Christian, Briley, King,[1] and the Lawrence County Board of Education (the “Board”). Christian and Briley (referred to collectively as the “bus drivers”) were sued in both their individual and their official capacities. The Board and the bus drivers filed a motion to dismiss in which they argued that they were entitled to sovereign and/or State-agent immunity and that Horton’s only remedy was to file a claim with the Board of Adjustment. The trial court granted that motion to dismiss, certifying it as final, pursuant to Rule 54(b), Ala.R.Civ.P. Horton appealed the dismissal of the bus drivers to the Alabama Supreme Court, which transferred the case to this court, pursuant to Ala.Code 1975, § 12-2-7(6). She appeals only the dismissal of the bus drivers in their individual capacities.[2]
“At the outset, we note the standard of review of a dismissal of a complaint pursuant to Rule 12(b)(6) is whether the plaintiff has stated a claim whereby relief can be granted under any provable set of facts and under any cognizable theory of law.” Henderson v. Early, 555 So.2d 130, 131 (Ala.1989).
“ ‘Where a [motion to dismiss] has been granted and [we are] called upon to review the dismissal of the complaint, we must examine the allegations contained therein and construe them so as to resolve all doubts concerning the sufficiency of the complaint in favor of the plaintiff. In so doing, [we do] not consider whether the plaintiff will ultimately prevail, only whether he has stated a claim under which he may possibly prevail.’ ”
Armstrong v. Brown Serv. Funeral Home West Chapel, 700 So.2d 1379, 1381 (Ala.Civ.App.1997) (quoting Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala.1985)) (citations omitted). “ ‘[I]t is the rare case involving the defense of [State-agent] immunity that would be properly disposed of by a dismissal pursuant to [Rule] 12(b)(6), [Ala. R. Civ. P.].”’ Ex parte Butts, 775 So.2d 173, 177 (Ala.2000) (quoting Patton v. Black, 646 So.2d 8, 10 (Ala.1994)).
Horton argues that the bus drivers were not entitled to State-agent immunity. She bases that argument on the Alabama Supreme Court’s redefined test for determining when a State agent is immune from civil liability in his personal capacity, first stated in Ex parte Cranman, 792 So.2d 392, 405 (Ala.2000); see also Ex parte Butts, 775 So.2d at 177-78 (adopting, as a majority viewpoint, the State-agent immunity test proposed by the plurality decision in Cranman). Rejecting the long-standing test, which was based on whether the State agent was performing a discretionary function or a ministerial task, the court crafted an approach that restricted the application of immunity primarily to those state agents whose conduct is related to the formulation or application of governmental policy:
“A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis *434 of the claim against the agent is based upon the agent’s
“(1) formulating plans, policies, or designs; or
“(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
“(a) making administrative adjudications;
“(b) allocating resources;
“(c) negotiating contracts;
“(d) hiring, firing, transferring, assigning, or supervising personnel; or
“(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
“(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers’ arresting or attempting to arrest persons; or
“(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
“Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
“(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
“(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.”
Cranman, 792 So.2d at 405.
Horton argues that the bus drivers’ duties are not included within any of the categories of State-agent immunity described by the supreme court in Cranman. Bus drivers certainly use their own judgment or discretion in performing their duties, but that judgment or discretion is not related to the formulation or application of governmental policy. The Cran-man court explained, “[Cjharacterizing as a discretionary function conduct remote from the execution of governmental policy ... would perpetuate an erroneous construction of the Constitution.” Cranman, 792 So.2d at 404. Thus, we conclude that the bus drivers are not entitled to State-agent immunity.
However, the bus drivers also argue that Horton was required to pursue her claims by filing a claim with the Board of Adjustment. The statute setting out the jurisdiction of the Board of Adjustment states:
“(a) The Board of Adjustment shall have the power and the jurisdiction and it shall be its duty to hear and consider:
[[Image here]]
“(9) All claims for injury or death of any student duly enrolled in any of the public schools of this state resulting from an accident sustained while being transported to or from school or in connection with any school activity in any bus or any motor vehicle operated directly by any school board or agency of the state or through contract with another.... If it should appear to the Board of Adjustment after investigation that the accident causing the injury or death of such student was caused under circumstances also creating a legal liability *435 for damages on the part of any party and it should further appear to the Board of Adjustment that claim may be made against such party by such student, his parent or legal representative to recover damages, then, in that event, any payment otherwise due under this subdivision may be withheld by the Board of Adjustment pending final settlement of such claim....
“(b) The jurisdiction of the Board of Adjustment is specifically limited to the consideration of the claims enumerated in subdivision (a) of this section and no others; provided, that ... nothing contained in this division shall be construed to confer jurisdiction upon the Board of Adjustment to settle or adjust any matter or claim of which the courts of this state have or had jurisdiction
[[Image here]]
Ala.Code 1975, § 41-9-62 (emphasis added).
When interpreting statutes, we must “ascertain and effectuate legislative intent as expressed in the statute.” Alabama Farm Bureau Mut. Cas. Ins. Co. v. City of Hartsette, 460 So.2d 1219, 1223 (Ala.1984). To do so, we must first focus our attention on the language of the statute and effectuate the intent clearly expressed therein if the language is unambiguous. Hartsette, 460 So.2d at 1223. The language in a statute or ordinance must be given its “natural, plain, ordinary, and commonly understood meaning.” Id. (citation omitted).
The purpose of the Board of Adjustment has been determined by our supreme court to be:
“[T]o extend! ] a measure of compensation or relief to citizens entitled thereto, who unfortunately suffered injury occasioned by the state or one of its agencies, commissions, boards or institutions or departments, while engaged in the performance of the sovereign functions or duties of the state, and for which the rule of sovereign immunity exempts the state and its respective agencies, commissions, boards, institutions or departments from any other duly recognized form of legal action to compensate for such unlawful act and proximate injury.”
State ex rel. McQueen v. Brandon, 244 Ala. 62, 69, 12 So.2d 319, 325 (1943); see also Ala.Code 1975, § 41-9-60. This court has stated that the “Board of Adjustment has jurisdiction over claims against the state that are not justiciable in the courts because of the state’s constitutional immunity from being made a defendant.” Vaughan v. Sibley, 709 So.2d 482, 486 (Ala.Civ.App.1997) (emphasis added).
The bus drivers argue that Horton was required to submit her claims to the Board of Adjustment, contending that she falls within the purview of subsection (a)(9). However, although the statute gives the Board of Adjustment jurisdiction over such cases as this, the statute does not require a claimant to file a claim with the Board. In fact, as is evident from the first emphasized portion of the statute we have quoted above, the Board could find that another party may be legally liable to the student and it may withhold payment until after the other claim has been decided in another forum. The bus drivers contend that this portion of subsection (a)(9) addresses the possible liability of a third party. However, the statute clearly reads any party. In this case, the bus drivers, because they are not entitled to State-agent immunity, certainly qualify as any party. Because the Board of Adjustment’s purpose is to provide for a measure of compensation for injury suffered at the hands of those entitled to immunity, it certainly seems inappropriate for a claimant to be required to submit a claim to the Board *436 when the persons who are responsible for the injury are not immune from suit.
In addition, as the second emphasized portion of the above-quoted statute, subsection (b), indicates, the Board of Adjustment does not acquire jurisdiction over any claim over which the state courts have jurisdiction. Horton has a cause of action against the bus drivers in their individual capacities. They are not immune from suit, under the rule expressed in Cranman and adopted by a majority of the supreme court in Butts. The circuit court has jurisdiction over Horton’s claims against the bus drivers.
To hold that Horton was required to file a claim with the Board of Adjustment and then not sue in the circuit court would invest the Board with exclusive jurisdiction over any claim involving a school-bus accident, regardless of whether the party allegedly at fault was immune from suit. Such a holding would also divest the courts of this state of their jurisdiction over negligence claims against nonimmune persons. We decline to so hold because, in our opinion, it would not serve the purposes of the statute creating the Board of Adjustment and because it would expand the statute beyond its scope.
The statute was designed to give persons like Horton an avenue of redress against state agencies, like the Board, because they are constitutionally immune from suit. Certainly, Horton’s claims against the Board were properly dismissed because the Board is immune from suit; Horton could have pursued her claim against the Board only by filing a claim with the Board of Adjustment. However, contrary to the bus drivers’ argument, the statute was not designed to be the only avenue for pursuing a claim against nonim-mune individuals in the event of a school-bus accident. Accordingly, the trial court’s judgment dismissing the claims against the bus drivers in their individual capacities is reversed and the cause is remanded for further proceedings.
REVERSED AND REMANDED.
ROBERTSON, P.J., and YATES, J., concur.
THOMPSON, J., concurs in the result.
MONROE, J., not sitting.

. The claims against King remain pending.

. Horton concedes that Article I, § 14, of the Alabama Constitution of 1901 grants immunity to the Board itself and to the bus drivers in their official capacities.