816 So.2d 1059 (2001)
OLD REPUBLIC SURETY COMPANY
v.
AUTO AUCTION OF MONTGOMERY, INC.
2991198.
Court of Civil Appeals of Alabama.
May 18, 2001.
*1060 Kay L. Cason and Donna Eich Brooks of Gorham & Waldrep, P.C., Birmingham, for appellant.
*1061 Kile T. Turner of Norman, Wood, Kendrick & Turner, Birmingham, for appellee.
CRAWLEY, Judge.
Old Republic Surety Company issued a used-motor-vehicle-dealer bond to Milo Aita, pursuant to Ala.Code 1975, § 40-12-398. Aita purchased a used motor vehicle from Auto Auction of Montgomery, Inc., with a check for $6,640. The check was returned for insufficient funds. Auto Auction sued Aita in the Shelby Circuit Court, which eventually entered a $7,636 default judgment against Aita. Auto Auction filed a claim against Old Republic, seeking payment on the default judgment based on the used-motor-vehicle-dealer bond Old Republic had issued to Aita.
Old Republic filed a declaratory-judgment action, seeking a judgment declaring that the bond it had issued to Aita pursuant to § 40-12-398 does not create an obligation to satisfy the default judgment obtained by Auto Auction. Both Auto Auction and Old Republic filed summary-judgment motions. The trial court denied Old Republic's motion and granted Auto Auction's motion. Old Republic filed a postjudgment motion, which the trial court denied. Old Republic then appealed from the summary judgment for Auto Auction.
We review a summary judgment de novo, applying the same standard the trial court applied. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R.Civ.P. A party moving for a summary judgment must make a prima facie showing "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Rule 56(c); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, "the burden then shifts to the nonmovant to rebut the movant's prima facie showing by `substantial evidence.'" Lee, 592 So.2d at 1038. "Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21-12(d). See West, 547 So.2d at 871, and Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989), for a further discussion of the application of the summary-judgment standard.
At issue in this case is the interpretation of § 40-12-398, which Old Republic argues does not require it to indemnify Auto Auction for Aita's insufficient-funds check, while Auto Auction contends that the section does require Old Republic to indemnify it for Aita's insufficient-funds check. That section states:
"Annually, before any license shall be issued to a new motor vehicle dealer, used motor vehicle dealer, motor vehicle reconditioner, motor vehicle rebuilder, or motor vehicle wholesaler, the applicant shall either deliver to the commissioner a good and sufficient surety bond, executed by the applicant as principal and by a corporate surety company qualified to do business in the state as surety, in the sum of $25,000 for a new motor vehicle dealer and $10,000 for all other dealers. Such bond shall be in a form to be approved by the commissioner, and shall be conditioned that the motor vehicle dealer, the motor vehicle reconditioner, motor vehicle rebuilder, or motor vehicle wholesaler shall comply with the conditions of any contract made by such dealer in connection with the sale or exchange of any motor vehicle and shall not violate any of the provisions of law relating to the conduct of *1062 the business for which he is licensed. Such bond shall be payable to the commissioner and to his successors in office, and shall be in favor of any person who shall recover any judgment for any loss as a result of any violation of the conditions hereinabove contained. Such bond shall be for the license period, and a new bond or proper continuation certificate shall be delivered to the commissioner at the beginning of each license period; provided, that the aggregate liability of the surety in any one license year shall, in no event, exceed the sum of such bond. The provisions of this section shall not apply to motor vehicle dealers or wholesalers who hold a valid motor vehicle dealer license under Section 40-12-51 or to motor vehicle rebuilders or reconditioners, as defined in this article who hold a valid business license to engage in such business as of April 1, 1978."
Because Old Republic and Auto Auction disagree over the interpretation of § 40-12-398, this court must "ascertain and effectuate the legislative intent as expressed in the statute." Alabama Farm Bureau Mut. Cas. Ins. Co. v. City of Hartselle, 460 So.2d 1219, 1223 (Ala.1984). To do so, we must first focus our attention on the language of the statute and effectuate the intent clearly expressed therein, if that language is unambiguous. City of Hartselle, 460 So.2d at 1223. The language in the statute must be given its "natural, plain, ordinary, and commonly understood meaning." Id.
Old Republic argues that the bond required by the statute applies to protect only individual consumers who purchase motor vehicles from a dealer. Old Republic argues that a wholesaler, such as Auto Auction, who sells motor vehicles to a motor-vehicle dealer, such as Aita, is not entitled to seek payment on the motor-vehicle-dealer bond. Auto Auction contends that the bond applies to it, a wholesaler.
This state's courts have not explicitly addressed the question who may seek payment on a motor-vehicle-dealer bond. This court addressed the issue whether § 40-12-398 can be given extra-territorial effect, and held that it can be. Old Republic Sur. Co. v. Auction Way Sales, Inc., 733 So.2d 878 (Ala.Civ.App. 1997). In that case, Old Republic also argued that § 40-12-398 was not intended to apply to wholesalers. This court concluded that the issue had not been raised in the trial court. 733 So.2d at 880. The court did state:
"A broad construction of the statute in favor of those whom the statute was designed to protect and against the fraudulent dealer and surety is merited....
"We conclude that the legislature intended for the bond requirement of § 40-12-398 to serve as a remedy for any person who recovers any judgment as a result of any violation of the conditions pertaining to the initial granting of the license."
The supreme court granted certiorari review of this court's judgment. Ex parte Old Republic Sur. Co., 733 So.2d 881 (Ala. 1999). That court held that the facts of the case did not require extraterritorial application of the statute, but required only that Old Republic, a surety qualified to do business in Alabama, make indemnity on a motor-vehicle-dealer bond issued in Alabama. 733 So.2d at 885. Although the supreme court disagreed with this court's rationale, it concluded that this court had "properly affirmed the trial court's judgment holding that Old Republic must indemnify Auction Way." The supreme court's opinion did not discuss whether Auction Way was a proper party to seek relief under the statutory bond.
*1063 Old Republic cites Price v. Piotrowski, 632 So.2d 1 (La.App.1994), in support of its argument. Price interpreted La.Rev.Stat. Ann. § 32:774(G), part of Chapter 4-B, "Used Motor Vehicle Dealers and Marine Product Dealers," which reads:
"G.(1) Every person, firm, or corporation before being licensed hereunder shall show proof of responsibility by depositing with the commission a continuing bond in the amount of ten thousand dollars with surety thereon of a company authorized to do business in the state, which bond shall be approved by the commission, payable to the state of Louisiana through the commission, and shall be conditioned upon faithful observance of all laws relating to the proper disposition of license, tags, or title ... and shall also indemnify any person who suffers any loss, damages, and expenses by reason of a failure to deliver title and for the proper disposition of all taxes, licenses, and registration fees."
The Louisiana court held that "the statutory bond in question is meant only to indemnify those parties to whom the principal owes a duty to deliver title, i.e., the ultimate consumer, and not other car dealerships from whom the principal has purchased cars." 632 So.2d at 4. The court reasoned that the statute imposes on the dealer a duty only to one who receives title from the dealer, specifically, a consumer who purchases a vehicle, and imposes on the dealer no duty to wholesalers from whom it purchases vehicles.
Auto Auction cites Hartford Cas. Ins. Co. v. Credit Union 1 of Kansas, 268 Kan. 121, 992 P.2d 800 (1999), in support of its contention. In that case, the Kansas Supreme Court interpreted Kan.Stat.Ann. § 8-2404, which reads in pertinent part:
"Every applicant or licensee who is or applies to be a used vehicle dealer or a new vehicle dealer shall furnish and maintain a bond in such form, amount and with such sureties as the director approves, in the amount of $15,000, conditioned upon the applicant or licensee complying with the provisions of the statutes applicable to the licensee and as indemnity for any loss sustained by any person by reason of any act by the licensee in violation of any act which constitutes grounds for suspension or revocation of the license.... Upon determination by the director that a judgment from a Kansas court of competent jurisdiction is a final judgment and that the judgment resulted from an act in violation of this act or would constitute grounds for suspension, revocation, refusal to renew a license or administrative fine pursuant to K.S.A. 8-2411, and amendments thereto, the proceeds of the bond or deposit or in lieu of bond provided by subsection (j) shall be paid."
The Hartford court stated that the purpose of the statute is mainly to protect the public, primarily consumers, but that it also is intended to protect a lender who makes a loan to a vehicle dealer. 268 Kan. at 128, 992 P.2d at 805. The court reasoned:
"[The statute uses] broad language in specifying the persons entitled to collect on a vehicle dealer's surety bond. Nothing in the stated policy of the Act, nor in the legislative history, limits the application of that language to consumers. It is also clear that the legislature, had it wanted to limit the application of the surety bond statute, could easily have done so by clearly limiting those persons entitled to collect."
268 Kan. at 129, 992 P.2d at 806.
We agree with the reasoning of the Kansas Supreme Court in Hartford. Like the Kansas statute at issue in Hartford, § 40-12-398 also states that the bond shall be in favor of "any person who shall recover any *1064 judgment for any loss as a result of any violation of the conditions hereinabove contained." Section 40-1-1(8) broadly defines "person" as "any individual, association, estate, trust, partnership, corporation, or entity of any kind."
Also, in Old Republic Sur. Co. v. Auction Way Sales and Ex parte Old Republic Sur. Co., both discussed above, this court and our supreme court allowed an automobile wholesaler to recover under the statutory-bond provisions of § 40-12-398 for a motor-vehicle dealer's returned checks. The Old Republic cases implicitly hold that nonconsumers such as Auto Auction can recover on the bond. Therefore, we interpret the term "any person," as it is used in § 40-12-398, to include Auto Auction, so that it may recover on the bond.
Old Republic also argues that the legislature did not intend that the transaction that led to this case, a dealer's purchase of a motor vehicle from a wholesaler, be covered by the statute. Old Republic emphasizes that the statute uses the phrase "any contract made by such dealer in connection with the sale or exchange of any motor vehicle." Old Republic correctly notes that the word "purchase" always accompanies the words "sale" and/or "exchange" throughout Article 8, except in § 40-12-398, which does not include the word "purchase." However, the same occurrence in this casethe dealer's issuance of a insufficient funds check for a "purchase"was the subject of the Old Republic cases discussed in the previous paragraph. Section 40-12-398 states that the bond "shall be conditioned" on the dealer's compliance with "the conditions of any contract" he enters. The check Aita issued to Auto Auction is a contract between Aita and Auto Auction. See Dennis v. Holmes Oil Co., 757 So.2d 479, 482 (Ala.Civ.App.2000) (interpreting § 7-3-104, Ala.Code 1975, as providing that a check is a contract between the payor and the payee). A holding that the statute does not cover this transaction would be inconsistent with our holding that the term "any person" is broad enough to include a wholesaler such as Auto Auction.
The trial court properly entered the summary judgment for Auto Auction.
AFFIRMED.
YATES, P.J., and THOMPSON and PITTMAN, JJ., concur.
MURDOCK, J., dissents.
MURDOCK, Judge, dissenting.
I disagree with the majority's determination that the bond required by § 40-12-398, Ala.Code 1975, protects a motor-vehicle wholesaler from whom a bonded dealer has purchased a motor vehicle. Instead, I conclude that § 40-12-398 addresses a dealer's "sale or exchange" of a motor vehicle.
The cardinal rule of statutory interpretation is to determine and give effect to the intent of the legislature as manifested in the language of the statute. Ex parte State Dep't of Revenue, 683 So.2d 980, 983 (Ala.1996). However, when the language of the statute is ambiguous or uncertain, we must otherwise determine its meaning. Mobile County Republican Executive Comm. v. Mandeville, 363 So.2d 754, 757 (Ala.1978). In doing so, this court properly may look to the reason and necessity for the statute, including the purpose or policy objective of the legislature in enacting the statute. See McRae v. Security Pac. Hous. Servs., Inc., 628 So.2d 429, 431 (Ala. 1993); Mandeville, 363 So.2d at 757; Advertiser Co. v. Hobbie, 474 So.2d 93, 95 (Ala.1985).
In addition, "[t]he intention of the legislature may be determined by examining the statute as a whole; thus, the court may *1065 look to other provisions of the same Act as an aid to construction." Tate v. Teague, 431 So.2d 1222, 1225 (Ala.1983). See also McRae, 628 So.2d at 432. Further, this court is entitled to consider conditions that might arise under the provisions of statutes and to examine the results that will follow from giving the language in question one particular meaning rather than another. Studdard v. South Cent. Bell Tel. Co., 356 So.2d 139, 142 (Ala.1978); League of Women Voters v. Renfro, 292 Ala. 128, 131, 290 So.2d 167,169 (1974).
The majority implies that the language of § 40-12-398 is clear and unambiguous to the effect that the required bond covers a dealer's contractual commitments in connection with its purchase of a motor vehicle. I believe that, at best, the statute is ambiguous in this regard.
Among other things, the majority discusses the issue of who falls within the category of "any persons" in whose favor the bond is to be issued under the statute. Under the statute, however, the bond shall be deemed "in favor of any person" only if the "conditions hereinabove contained" are satisfied. Thus, I believe that the dispositive issue in the present case is not the types of persons who might benefit from the bond, but rather what conduct, and by whom, is intended to be the subject of the bond's protection.
Our statute expressly provides that a "sale or exchange" of a motor vehicle triggers the bond's protection; the only real question is: a sale or exchange by whom? In my view, the manner in which the statute is worded indicates a concern with a sale or exchange by a dealer.[1] The focus throughout § 40-12-398 is on the conduct of dealers. For example, the statute provides that the bond protection is conditioned upon a dealer's complying "with the conditions of any contract made by such dealer." In this context, I believe that the "sale or exchange" referenced in the second sentence of § 40-12-398 must relate back to the parties whose conduct is the object of that provision's concerndealers.
In concluding that the statute does not require a bond to cover commitments of a dealer in connection with its purchase of a motor vehicle, I note the absence of the word "purchase" in § 40-12-398. As the majority points out in its opinion, the word "purchase," or a synonym thereof, accompanies every other mention in Article 8 of a "sale or exchange." See §§ 40-12-390(7), 390(11), 391(b), and 399, Ala.Code 1975. "Where a statute enumerates certain things on which it is to operate ..., the statute must be construed as excluding from its effect all things not expressly mentioned...." Ex parte Holladay, 466 So.2d 956, 960-61 (Ala.1985).
In addition to the language of § 40-12-398, and related sections in Article 8, the apparent reason and necessity for the statute suggest that § 40-12-398 was not intended to provide protection for parties from whom the bonded dealer has purchased a motor vehicle. For example, when a dealer makes a purchase from a motor-vehicle wholesaler, it presumably is dealing with an entity more knowledgeable regarding motor-vehicle transactions than is the average consumer, as well as a party aware of other methods of protecting its interests. In this case, for example, Auto Auction could have protected itself by such measures as retaining a security interest in the vehicle sold to Aita, refusing to accept payment by check, or acquiring an *1066 insurance policy against losses stemming from the acceptance of checks written on insufficient funds. In fact, the record indicates that Auto Auction was reimbursed for the full amount of its loss in this case under such an insurance policy. The legislature's intent to protect consumers is obvious; its intent to protect other commercial actors in this context is not. See Insurance Co. of N. Am. v. General Elec. Credit Corp., 119 Ariz. 97, 579 P.2d 601 (1978) (holding statutory requirement for motor-vehicle-dealer bond covering "loss by reason of any unlawful act of the licensee" as not justifying addition of bond to the "arsenal" of other remedies afforded a secured creditor); Chrysler Credit Corp. v. United States Fid. & Guar. Co., 543 So.2d 642, 644 (La.Ct.App.1989).
Moreover, in light of the relatively small bond amounts required under § 40-12-398, the practical effect of the majority's holding would be to exclude many individual consumersthose most in need of protection from defective or unfit vehicles that will be operated on Alabama's public roads and that often represent the most substantial purchases made by a consumer outside his or her residencefrom benefiting under the bond. Section 40-12-398 requires an annual bond "in the sum of $25,000 for a new motor-vehicle dealer and $10,000 for all other dealers." If parties from whom the bonded dealer purchases motor vehicles are added to the pool of beneficiaries, the bond quickly could be depleted, leaving individual consumers unprotected. See Chrysler Credit Corp., supra.
Finally, the majority cites Hartford Casualty Insurance Co. v. Credit Union 1 of Kansas, 268 Kan. 121, 992 P.2d 800 (1999), in support of its holding. I find more persuasive, as to the meaning of Alabama's statute, the holding of the Louisiana Court of Appeals in Chrysler Credit Corp. The court construed a statute that required motor-vehicle dealers to obtain bonds "conditioned so that the dealer ... shall comply with the conditions of any written contract made by such dealer ... in connection with the sale or exchange of any motor vehicle and shall not violate any of the provisions of this Chapter or any other law of Louisiana in the conduct of the business for which he is licensed." 543 So.2d at 644. The Court considered, among other things, the public policy behind the statute and concluded that it was designed to address sales or exchanges of motor vehicles by dealers to the consuming public.
Based on the foregoing, I conclude that the trial court erred in entering the summary judgment in favor of Auto Auction. Because I believe that judgment should be reversed, I respectfully dissent.
NOTES
[1] By its terms, the statute certainly cannot be said clearly to apply to a sale or exchange to a dealer. Compare Ex parte Old Republic Sur. Co., 733 So.2d 881, 883 n. 1 (Ala.1999) (refusing to consider, because not raised in the court below, Old Republic's argument that the statute, by its terms, does not apply to a "sale to a licensed dealer.")